## MARKS, TREASURER OF TIPPECANOE CO., *v.* THE TRUSTEES OF PURDUE UNIVERSITY.

AGRICULTURAL COLLEGE.—*Donations by Counties for Location.*—*Want of Power.*—*Ratification.*—*Statutes.*—On the 14th of January, 1869, no board of commissioners of any of the counties of this State possessed the power to make a donation for the purpose of securing the location, within their jurisdiction, of the agricultural college, contemplated in the passage of the act of Congress of July 2d, 1862, and the act of the legislature of this State, of March 6th, 1865. But when an order was passed by any board of county commissioners, making an appropriation for that purpose, the order was not void, but was capable of ratification by the legislature.

SAME.—Such an order, passed by the Board of Commissioners of Tippecanoe county on the 14th day of January, 1869, was ratified and rendered valid by the act of the legislature of May 6th, 1869, accepting the donation and locating the college in that county.

SAME.—*Treasurer.*—*Warrant.*—*Interest.*—When a warrant was issued by the auditor of that county upon the treasurer, for an instalment of money due under said order, it was the duty of the treasurer to pay the same, if there

were sufficient funds for that purpose, or if there were not, to indorse on such order " not paid for want of funds," and the instalment would bear interest from that date, although the order of the board provided for the payment of the sum donated, in five yearly instalments, without interest.

SAME.—*Local Object.*—*Taxation.*—*Constitution.*—An obligation entered into by the county, for the purpose of securing such location of the college, is solely a county purpose, local in its nature, and properly assessed and collected as are taxes for other county purposes. Such taxation is under the general law, and, therefore, the act of the legislature ratifying the donation is not in conflict with article 4, section 22, of the state constitution, on the subject of special or local legislation, nor with article 10, section 1, requiring a uniform and equal rate of assessment and taxation.

SAME.—*Consideration.*—*Benefits.*—The benefits conferred on the county, of a local character, were sufficient consideration for the promise to pay for the location of the college within its limits.

APPEAL from the Tippecanoe Common Pleas.

WORDEN, C. J.—On the 2d of July, 1862, an act of Congress was approved, by which it was provided, "that there be granted to the several states, for the purposes hereinafter mentioned, an amount of public land, to be apportioned to each state a quantity equal to thirty thousand acres for each senator and representative in Congress to which the states are respectively entitled by the apportionment under the census of 1860."

The purpose declared was "the endowment, support, and maintenance of at least one college where the leading object shall be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agriculture and the mechanic arts, in such manner as the legislatures of the states may respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life."

On March 6th, 1865, the legislature of the State of Indiana passed an act accepting and claiming the benefits of the provisions of said act of Congress, assenting to all the conditions and provisions thereof. 3 Ind. Stat. 8.

On the 14th of January, 1869, the board of commissioners of Tippecanoe county made the following order:

"Come now, John Rosser, Martin L. Pierce, H. T. Sample, Adams Earl, O. W. Pierce and others, and present their petition, which reads as follows, to wit: 'To the Honorable Board of Commissioners of Tippecanoe County, Indiana. The undersigned citizens, deeming it greatly to the interest of the county of Tippecanoe to secure the location of the agricultural college within the said county, and believing that the same might be obtained if your honorable board would pass an order proffering to make a liberal donation to said college (naming the amount in' the order) in case of its location here, would respectfully petition your honors to pass such order without delay.' Whereupon it is ordered by the board that the sum of fifty thousand dollars, to be paid in five annual instalments of ten thousand dollars each, without interest, be, and the same is hereby donated, and the same to be paid out of the treasury of said county for the purpose of securing the location of the agricultural college in said county, said payments to begin one year from the date of the location of said college."

On May 6th, 1869, an act of the legislature was approved, accepting certain donations offered, including that of Tippecanoe county, locating the college in that county, and naming it the "Purdue University." 3 Ind. Stat. 12.

In order to a clear understanding of the questions involved, we here set out such portions of the statute last cited as bear upon them.

"Sec. 1. Be it enacted by the general assembly of the State of Indiana, that the donations offered by John Purdue, as set forth and communicated to the present general assembly in the message of the governor, on the 16th day of April, 1869, and the donations offered by the county of Tippecanoe, and the trustees of the Battle Ground Institute, and the trustees of the Battle Ground Institute of the Methodist Episcopal church, as set forth and communicated to the general assembly at its last session, in the message of the governor of the 27th day of January, 1869, be, and the same are hereby accepted by the State of Indiana.

"Sec. 2. The college contemplated and provided by the act of Congress, approved July 2d, 1862, entitled 'an act donating public lands to the several states and territories which may provide colleges for the benefit of agriculture and the mechanic arts,' is hereby located in Tippecanoe county, at such point as may be determined before the 1st day of January, 1870, by a majority vote of the trustees of the Indiana Agricultural College; and the faith of the State is hereby pledged that the location so made shall be permanent.

"Sec. 3. In consideration of the said donation by John Purdue, amounting to one hundred and fifty thousand dollars, and of the further donation of one hundred acres of land appurtenant to the institution, and on condition that the same be made effectual, the said institution, from and after the date of its location as aforesaid, shall have the name and style of 'Purdue University,' and the faith of the State is hereby pledged that said name and style shall be the permanent designation of said institution, without addition thereto or modification thereof.

"Sec. 6. This act shall be subject to future amendment or repeal, except so far as it provides for the acceptance of donations, the location of the college, and the name and style thereof, and the rights and privileges conferred upon John Purdue."

On June 7th, 1870, the auditor of Tippecanoe county issued his order or warrant, directed to the treasurer of the county, requiring the latter to pay to the treasurer of the university ten thousand dollars "for the first instalment of appropriation, made January 14th, 1869." The warrant being presented to the county treasurer for payment, he refused either to pay the same, or endorse thereon "not paid for want of funds."

This action was instituted, by way of mandate, to compel payment of the warrant. Judgment below for the appellee, the university.

Besides the main question in the cause, whether the board of commissioners had the power to make the order in ques-

tion, some other objections of a more technical character are made to the proceedings below. It is objected that the affidavit did not show that there were funds in the treasury, with which to pay the warrant. This, we think, was not necessary. The appellee had the right to have the warrant paid if there were funds for that purpose, and if not, to have it indorsed, "not paid for want of funds." 1 G. & H. 641, sec. 8. But the appellant insists that no such indorsement, thereby putting the order upon interest, should be made, for the reason that by the terms of the order making the donation, the instalments were to be paid without interest. The fair construction of the order of the board is, as we think, that none of the several instalments should bear interest until they respectively became due. After an instalment became due, and a warrant was issued for it, if it could not be paid for want of funds, we see no reason why it should not bear interest like any other county order not paid for want of funds. It may be observed that it was shown, on the hearing, that there were funds in the treasury for the payment of the order.

Again, it is claimed that the college had not been located in Tippecanoe county, and, therefore, that no instalment of the donation had become due. We have seen by the statute above set out, passed more than a year before the issuing of the warrant in question, that the college was not only located in Tippecanoe county, but the legislature failed to reserve the right to change the location by way of repeal or amendment, and pledged the faith of the State that the location should be permanent. The precise point in Tippecanoe county, at which the college should be located, was not determined by the act above set forth; that was left to the determination of the trustees, etc.

The order of the board of commissioners making the donation did not require the college to be located at any particular point in the county, but simply "in said county." The act clearly established the location in the county.

We come to the question as to the power of the board to make the order.

No statute has been cited, and we are not aware of the existence of any, in force at the time, that authorized the making of the order. It follows that the order was made without legislative authority. Still it was not void in that absolute sense that made it incapable of ratification. If a party, without authority, but professing to act as the agent of another, does an act in the name of his supposed principal, the act is not absolutely void, but may be ratified by the supposed principal, and when so ratified it is as valid as if the pretended agent had had full authority when the act was done. That an order of the board of commissioners, made without authority of law, may be ratified and rendered valid and effectual, is established by the numerous cases in this court upholding the act of March 3d, 1865, 3 Ind. Stat. 565, legalizing bonds, orders, and appropriations made for the purpose of procuring or furnishing volunteers and drafted men, etc.

Has there been such a ratification by the legislature in the case under consideration? This question must be answered in the affirmative, unless we are to impute to the legislature bad faith, as well as the absurdity of inserting a clause in the statute above set out utterly destitute of meaning or significance. It is enacted in the first section, "that the donations offered by John Purdue * * * and the donations offered by the county of Tippecanoe * * * be and the same are hereby accepted by the State of Indiana." Did the legislature, amidst the struggle of other portions of the State to procure the location of the college, and under the pretence of accepting the donation offered by Tippecanoe county, intend to favor that county with the location, and at the same time let her escape payment of the proffered donation on the ground that her commissioners had not the authority to make it? No such design can legitimately be imputed to a co-ordinate department of the government without cogent and conclusive reasons. None such exist in the case. The acceptance of the donation necessarily implies the power to make it, and is as perfect a legislative

ratification of the act of offering it as could be a law ratifying it in express terms. This must be construed to have been the intention of the legislature; otherwise that portion of the law accepting the donation of Tippecanoe county would be meaningless and inoperative. We conclude, therefore, that the proceedings of the board in making the order in question were ratified and made valid by the legislature, unless some defect existed in the power of the legislature to make such ratification.

Treating the law as being an intended ratification of the proceedings of the board of commissioners, two objections are made thereto; first, that it requires local taxation for a state purpose; and, second, that it is a special law and not of uniform operation.

The sole object and purpose of the donation was to secure the location of the college in Tippecanoe county, as may be gathered from the petition filed before the board and the action of the board thereon.

It does not appear that the donation was made, as is argued by counsel for the appellant, to aid in the erection of a college building, which it was the duty of the State to erect and maintain. It may be conceded that the college or university is a state institution; and the question arises whether taxes may be assessed in a county to liquidate a debt contracted by the county in securing the location of such state institution in the county; for if not, the debt cannot be valid.

The constitution provides, art. 4, sec. 22, that "the general assembly shall not pass local or special laws, in any of the following enumerated cases; that is to say * * * for the assessment and collection of taxes for state, county, township, or road purposes."

"Section 23. In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."

While the university is a state institution, and every citizen will have an equal right, under the same circumstances, to avail himself of its privileges, still the location of it in a given county will, doubtless, confer upon that county many local benefits of pecuniary value. The parents of the county can send their sons and perhaps their daughters to the college to be educated, at a less expenditure of time and money than would be incurred if it were situated at a more remote point in the State. The college, with its professors, tutors, attendants, and students, will probably diffuse much more money throughout the community than would otherwise circulate. It may also add to the educated and intelligent population of the place, and be the means of stimulating the industry and increasing the wealth and moral worth of the community, thereby enhancing the attractions of society and the value of property.

There may be other and greater local benefits than those above glanced at.

Now, it seems to us, that taxes collected to discharge an obligation entered into by the county, solely for the purpose of securing the location of the college in that county, cannot be said, in any just sense, to be collected for any state purpose. On the contrary, they are solely for a county purpose. Were they for state purposes, they would have to be assessed uniformly throughout the State, in accordance with section 1 of article 10 of the constitution.

The fact that the college is a state institution cannot change the character or nature of the transaction. Railroads are, in some sense, state institutions; and yet local subscriptions by counties and cities are upheld. Highways and streets are state institutions, to the proper use and enjoyment of which all citizens have an equal right; yet local taxation, to improve and keep them in order, is constantly maintained. The taxation required being merely for a county purpose, the provisions of section 1 of article 10 are complied with if the taxes are uniform throughout the county. *Bright* v. *McCullough,* 27 Ind. 223; *Palmer* v. *Stumph,* 29 Ind. 329.

Marks, Treasurer of Tippecanoe Co., *v.* The Trustees of Purdue University.

The constitution, in section twenty-two of article four, above quoted, does not inhibit the passing of local or special laws whereby a debt may be contracted by a county. It simply inhibits the passage of such laws for the assessment and collection of taxes for the purposes named therein.

The law under consideration is not one for the assessment and collection of taxes. It is simply a law, so far as the point under consideration is concerned, to ratify and accept the donation offered by Tippecanoe county.

There needs to be no special or local law to enable the county to raise the funds necessary to meet her obligation. The general law is ample for that purpose. 1 G. & H. 249, sec. 13; *id.* 68, sec. 1.

It remains to inquire whether the law in question is objectionable as being local or special, when a general law could have been made applicable; or, in other words, whether it violates section twenty-three above quoted. The subject of the law was local, and where such is the case, the objection cannot prevail. *Cash* v. *The Auditor of Clark Co.,* 7 Ind. 227; *Stocking* v. *The State,* 7 Ind. 326. The college could have but one location; and but one county could have actually made a donation on condition of its location therein, as the condition could only have been performed as to one county. The case falls clearly within those above cited.

There are numerous laws found in the statute book, that may, in some sense, be said to be local or special, but which are upheld. Thus there are laws creating criminal courts in particular counties. 3 Ind. Stat. 172, *et seq.*

In *Gentile* v. *The State,* 29 Ind 409, it was decided by this court that it was exclusively for the legislature to judge whether a law on any given subject, not enumerated in section twenty-two, could be made applicable to the whole State. On this point we find it unnecessary to express any opinion, as we are satisfied that no valid objection to the law exists.

There can be no doubt, on general principles, that the location of the college in Tippecanoe county was a sufficient

consideration to support the promise on the part of the
county. The offer on the part of the county, and its accept-
ance by the legislature, together with the location of the col-
lege in Tippecanoe county, constituted a valid and binding
contract.

We find no error in the record.

The judgment below is affirmed, with costs.

*G. O. Behm* and *A. O. Behm*, for appellant.

*H. W. Chase, J. A. Wilstach, J. R. Coffroth, T. B. Ward,*
and *J. A. Stein*, for appellees.