The State, *ex rel.* City of Terre Haute, *v.* Kolsem *et al.*

———◆———

No. 16,249.

## THE STATE, EX REL. CITY OF TERRE HAUTE, *v.* KOLSEM ET AL.

REVIEW OF JUDGMENT.—*Appeal Prayed in Original Case.—Jurisdiction.*— The fact that an appeal was prayed, but not perfected, does not prevent the lower court from reviewing its judgment.

CONSTITUTIONAL LAW.—*Municipal Board of Police, Appointment.—Act of 1891.*—The Legislature has the power to provide for the appointment of a municipal board of police, and the act of 1891 (Acts 1891, p. 90), is constitutional.

SAME.—*Local Self-Government.—Constabulary.*—In providing for the appointment of officers connected with the constabulary of the State, there is no invasion of the right of local self-government, but simply the exercise of the power to provide for the selection of peace officers of the State.

SAME.—*Motive of Legislators.*—In passing upon the constitutionality of a law the courts can not inquire into the motive of the legislators.

SAME.—*Special Laws.*—Where special laws are not forbidden by the Constitution they may be enacted.

SAME.—*Special Laws.— When May be Enacted.*—The Constitution does not prohibit the enactment of special where general laws can not be made applicable.

SAME—*Legislature Exclusive Judge of Necessity for Special Law.*—Whether a general law on any subject not embraced within the enumeration of subjects in section 22, article 4, of the Constitution, can be made applicable is exclusively a legislative question, and the legislative judgment

The State, *ex rel.* City of Terre Haute, *v.* Kolsem *et al.*

will not be reviewed by the courts. McBRIDE and OLDS, JJ., dissent.

SAME —*Classification of Laws.*—Whether a system of classification adopted by the Legislature, in enacting laws, is a good or vicious one is a question with which the courts have nothing to do.

SAME.—*Necessary Means.*—*Legislature Judge of.*—Where the Legislature has power over a subject, it is the sole judge of the means that are necessary and proper to accomplish the object it seeks to attain.

SAME.—*Estoppel.*—*Repeal of Laws.*—The Legislature can not be estopped, nor can it pass an irrepealable law.

SAME.—*Title of Act.*—*Details.*—If the title of an acts covers a general subject the act is valid, no matter how minutely it may go into details germane to such general subject.

MUNICIPAL CORPORATION.—*Vested Right in Office or Public Property.*—A municipal corporation is not clothed with any vested right in a public office, nor does it possess a vested right in public property; and in transferring property and authority from one class of officers to another no vested right of the municipality is invaded.

SAME.—*Repeal or Alteration of Charter.*—The charter of a municipality may be repealed or altered at the will of the Legislature.

From the Vigo Superior Court.

*R. B. Stimson, S. C. Stimson, A. M. Higgins, A. C. Harris* and *L. Cox,* for appellant.

*J. D. Early, J. Jump, J. E. Lamb, J. G. McNutt* and *S. R. Hamill,* for appellees.

ELLIOTT, C. J.—A preliminary question, arising upon the contention of counsel that the appellees are barred from prosecuting this action, first requires consideration. The facts upon which counsel plant themselves are, in substance, these : The relator filed an information in the nature of a *quo warranto* against the appellees, asserting that they had entered into the office in controversy without right. The trial court sustained the relator, and gave judgment in its favor. The appellees prayed an appeal, but took no further steps to effect an appeal. Subsequently the appellees brought this suit to review the judgment, and obtained the relief they sought. If the appellees had perfected their appeal, there could be no doubt that the case would have been entirely removed from the jurisdiction of the trial court, and that court

could not have entertained a bill to review the judgment pending the appeal. *Allen* v. *Allen,* 80 Ala. 154 ; *Boynton* v. *Foster,* 7 Metcf. 415 ; *Mitchel* v. *United States,* 9 Pet. 711 ; *Ensminger* v. *Powers,* 108 U. S. 292 (309) ; *Burgess* v. *O'Donoghue,* 90 Mo. 299. But here there was no appeal, for this court never acquired jurisdiction. *Holloran* v. *Midland R. W. Co.,* 129 Ind. 274. As there was no appeal, jurisdiction was not vested in this court, and the trial court did not err in entertaining jurisdiction of the bill of review.

The controversy grows out of the claim made by the appellees to the office of police commissioner of the city of Terre Haute, to which they assert title under the act of March 4th, 1891. Acts of 1891, p. 90. The relator denies their right to the office, affirming that the act under which they assert title is invalid, because it violates the provisions of the Constitution.

The power of the Legislature to provide for the appointment of members of a municipal board of police has been affirmed in every instance in which it has been so challenged and presented as to require the judgment of the courts. Those courts which hold to the doctrine that control of matters of purely local concern can not be taken from the people of the locality place their decisions upon the ground that the selection of peace officers is not a local matter, but is one of State concern, inasmuch as such officers belong to the constabulary of the State. But while the reasoning of the courts is diverse, the ultimate conclusion reached by all the cases is the same. *City of Indianapolis* v. *Huegele,* 115 Ind. 581 ; *State, ex rel.,* v. *Denny,* 118 Ind. 382 ; *State, ex rel.,* v. *Denny,* 118 Ind. 449 ; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426 ; *State, ex rel.,* v. *Blend,* 121 Ind. 514 ; *People, ex rel.,* v. *Draper,* 15 N. Y. 532 ; *People, ex rel.,* v. *Shepard,* 36 N. Y. 285 ; *People, ex rel.,* v. *Mahaney,* 13 Mich. 481 ; *State, ex rel.,* v. *Covington,* 29 Ohio St. 102 ; *Police Commissioners* v. *City of Louisville,* 3 Bush, 597 ; *State, ex rel.,* v. *Hunter,* 38 Kan.

The State, *ex rel.* City of Terre Haute, *v.* Kolsem *et al.*

578 ; *Mayor, etc.,* v. *State, ex rel.,* 15 Md. 376 ; *State, ex rel.,* v. *Seavey,* 22 Neb. 454.

In our judgment the act here assailed may be upheld upon the ground that it does not trench upon the right of local self-government. We put our decision on this point upon the principle that in providing for the appointment of officers connected with the constabulary of the State there is not an invasion of the right of local self-government, but simply the exercise of the power to provide for the selection of peace officers of the State.

A municipal corporation is not clothed with any vested right in a public office ; nor, indeed, does it possess a vested right in public property. It has been long and firmly settled that the charters of public corporations may be repealed or altered as the Legislature, in the exercise of its constitutional powers, deems proper. *Sloan* v. *State,* 8 Blackf. 361 ; *Meriwether* v. *Garrett,* 102 U. S. 472 ; *Coffin* v. *State, ex rel.,* 7 Ind. 157 ; 1 Dillon Municipal Corp. (4th ed.), sections 61, 63, 71. See, also, authorities collected in Elliott Roads and Streets, p. 320.

The rule stated by us fully and effectually disposes of the argument of counsel that the act is void because it impairs the vested rights of the city of Terre Haute, as it is quite clear that in transferring property and authority from one class of officers to another no vested right of the municipality was invaded.

The act contains this provision : " That in all cities having an enumeration of children between the ages of six and twenty-one years, of 14,000 and over, as shown by the official returns of such enumeration, made by the several county superintendents of this State to the superintendent of public instruction, for the year 1890, there shall be established within and for said city, a board of metropolitan police, to consist of three commissioners, to be appointed by the Governor, secretary, treasurer and auditor of state, or a majority of them." The appellant's counsel argue, with sig-

nal ability, that the Legislature in selecting the standard of classification has chosen an arbitrary, unreasonable and ineffective one, and that, therefore, the act must fall because it is a special one, and is of the class of special legislation interdicted by the Constitution. It may possibly be true, as counsel assert, that the standard of classification was adopted for the sole purpose of bringing a single municipality under the act, and that the motives of the Legislature were not commendable; but, granting all this, yet no reason is supplied for condemning the law, for the courts can not inquire into the motives of the legislators. All that the courts can rightfully do is to ascertain and decide whether any constitutional provision is violated. Their power extends only to an investigation and determination of the question whether the law is or is not unconstitutional.

The subject to which the act under consideration is addressed is not one upon which the Legislature is forbidden to enact special laws. If the subject were one of those enumerated in the section which prohibits the enactment of special laws, we should have a very different case from the one before us; but it is not within the classes enumerated, nor can it be brought within the enumeration save by interpolating a provision not written in the Constitution. It is, of course, known to all that where special laws are not forbidden they may be enacted. *Thorpe* v. *Rutland R. R. Co.*, 27 Vt. 140; *Adams* v. *Howe*, 14 Mass. 340; *Sharpless* v. *Mayor, etc.*, 21 Pa. St. 147 (161). If the enactment of such a law as the one before us is forbidden, it must be by virtue of section 23 of article 4 of the Constitution, for the subject embraced in the act is not included in the enumeration found in the preceding section. But section 23, as has been again and again decided, does not prohibit the enactment of special laws, where general ones can not be made applicable. It has also been repeatedly held that whether a general law can be made applicable to a particular subject is exclusively a legislative question, and it necessarily results that if the

question is legislative the whole matter, with all its incidents, must be determined by the Legislature. It has been steadily held since the decision in *Gentile* v. *State*, 29 Ind. 409, that the Legislature is the exclusive judge of whether a general law can be made applicable to a subject not enumerated in section 22 of article 4 of the Constitution. In that case it was said : "As the General Assembly, then, have the power to pass local laws where general ones can not be made applicable, and as the Constitution does not declare, except in the cases enumerated in section 22, in what particular cases general laws can be made applicable, or designate the proper subjects of local legislation, who is to determine when a law may be local, or when a general law can be properly applied to the particular subject? Most unquestionably, those who make the law are necessarily required, in its enactment, to judge and determine, from the nature of the subject, and the facts relating to it, whether it could properly be made general, and of uniform operation throughout the State." Among the many cases affirming and enforcing the doctrine so emphatically declared in the case from which we have quoted are these : *City of Evansville* v. *State, ex rel.*, 118 Ind. 426 (433) ; *Wiley* v. *Corporation of Bluffton*, 111 Ind. 152 ; *Johnson* v. *Board, etc.*, 107 Ind. 15 (22) ; *Kelly* v. *State, ex rel.*, 92 Ind. 236 ; *Stuttsman* v. *State*, 57 Ind. 119 ; *Vickery* v. *State*, 50 Ind. 461 ; *Marks* v. *Trustees, etc.*, 37 Ind. 155 ; *State, ex rel.*, v. *Tucker*, 46 Ind. 355 ; *Clem* v. *State*, 33 Ind. 418 ; *Longworth* v. *Common Council, etc.*, 32 Ind. 322 ; *State* v. *Boone*, 30 Ind. 225 ; *State* v. *Hockett*, 29 Ind. 302. It is simply and absolutely impossible to escape the force of the decision in *Gentile* v. *State, supra*, for the question was there made and there decided. The question was before the court for decision, and judgment was given upon it. This has been affirmed in many cases in terms as strong as the pen can frame. In the case of *City of Evansville* v. *State, ex rel., supra*, the question came before the court upon an act relating to precisely the same subject as that covered by the act now before us.

There is no room for doubt as to what was there decided, nor is it possible to doubt that what was there decided is controlling here. What was there said upon the point, and all that was said, is this: "To the objection that the act is in violation of section 23, article 4, the answer must be that the question is one for the Legislature, and not for the courts." It is not easy to conceive how there could be a stronger or clearer decision that the whole question is legislative than that in the case from which we have quoted, but other cases are equally strong and clear. The court directly applied the doctrine of *Gentile* v. *State, supra,* to the amendment of a town charter in the case of *Wiley* v. *Corporation of Bluffton, supra,* and in *Johnson* v. *Board, etc., supra,* applied that doctrine to a legalizing act, saying: "And hence many local and special laws have been upheld and the rulings have been, that where the case does not fall within the cases enumerated in section 22, it is for the Legislature to determine whether or not a general law can be made applicable, and that the legislative judgment upon that question will not be reviewed by the courts."

In *Vickery* v. *Chase, supra,* BUSKIRK, J., delivering the opinion of the court, said : " Besides, it has been repeatedly held by this court, that 'the Legislature is the exclusive judge, whether a law on any subject not enumerated in section 22 of article 4 of the Constitution can be made general and applicable to the whole State.' " He also said that the doctrine " is too firmly established to be now changed, and is decisive of the case in judgment, so far as it is affected by section 23 of article 4." Earlier cases had, however, declared the question to be unalterably settled. It can not, therefore, be doubted that the firmly settled rule, as fully understood and directly enforced by a long and unbroken line of decisions, is that whether an act relating to a subject not embraced in section 22 of article 4 can or can not be made general is exclusively a legislative question. But other courts than ours have declared, in terms not less decided and explicit

than those employed by our own court, that the question must be determined by the Legislature, and that the legislative decision is beyond judicial review. *Brown* v. *City of Denver*, 7 Col. 305; *Carpenter* v. *People, ex rel.*, 8 Col. 116; *State, ex rel.*, v. *County Court of Boone*, 50 Mo. 317; *State, ex rel.*, v. *County Court of New Madrid*, 51 Mo. 82; *Hall* v. *Bray*, 51 Mo. 288; *State, ex rel.*, v. *Hitchock*, 1 Kan. 178; *Beach* v. *Leahy*, 11 Kan. 23; *Davis* v. *Gaines*, 48 Ark. 370.

All of the cases referred to are influential, because the decisions were made upon Constitutions like ours; some of them are especially so, because they affirm, as our own court has so often done, that the decision in *Gentile* v. *State, supra,* authoritatively adjudges that the question is purely and exclusively a legislative one.

The Constitution has been authoritatively construed by the courts. The judicial work has been done, and the question here is whether we shall undo that work, not whether we will decline to give the constitutional provision a construction. We abide by the rule established; we adhere to the construction so long held to be correct; and, in doing this, leave no duty unperformed. If we should undo the work that has been done, and depart from the long settled doctrine, we should, indeed, turn from the line of duty, and take the foundation from scores of curative and legalizing acts, as well as from many other laws that have long passed unchallenged. But it by no means results from our decision here, nor from the decisions in the cases we follow, that special laws may be enacted upon all subjects connected with towns or cities.

The decisions put at rest the question whether or not the Legislature can determine whether a general law, upon a subject not enumerated in section 22 of article 4 can or can not be made applicable, by affirming that it is exclusively a legislative question, and the court must and does so adjudge. If the question is legislative, then it is indisputably true that it is excluded absolutely and entirely from the domain

of the judiciary. It is inconceivable that the question can be dissected into fragments, and one part assigned to one department of government and another part to a different department. Under our system of government the departments are distinct and independent; there is no such thing as a power partly judicial and partly legislative. *Greenough* v. *Greenough,* 11 Pa. St. 489 ; *State, ex rel.,* v. *Noble,* 118 Ind. 350 ; *Wright* v. *Defrees,* 8 Ind. 298 ; *State, ex rel.,* v. *Denny,* 118 Ind. 382 (386) ; *State, ex rel.,* v. *Denny,* 118 Ind. 449 ; *Hovey* v. *State, ex rel.,* 127 Ind. 588.

As the question whether a general law can be made applicable is exclusively legislative, the incidents of the main questions are necessarily and entirely legislative. Where the principal subject belongs, there the incidents belong. Means, methods and the like belong to the department that is invested with power over the general subject. It is for that department to make choice of modes and means, and, as the Supreme Court of the United States has said, " it is master of its own discretion." *Legal Tender Cases,* 12 Wall. 457 (561) ; *Hancock* v. *Yaden,* 121 Ind. 366 ; *State, ex rel.,* v. *Haworth,* 122 Ind. 462 (467).

Where the Legislature has power over a subject, it is the sole judge of the means that are necessary and proper to accomplish the object it seeks to attain. *Legal Tender Cases,* 110 U. S. 421. The courts can not assume control of the general subject or any of its incidents. As Judge Cooley says : " The moment a court ventures to substitute its own judgment for that of the Legislature, in any case where the Constitution has vested the Legislature with power over the subject, that moment it enters upon a field where it is impossible to set limits to its authority, and where its discretion will alone measure the extent of its interference." Cooley Const. Lim. (4th ed.) 129. The rule is that where a subject lies wholly within the legislative field, into that field the judiciary can not enter. It must, therefore, be true that where a subject is committed to the legislative judgment, the

Legislature is invested with power to determine the mode of enacting statutes. Whether the legislation shall be by original or by amendatory statute is for the Legislature to decide. *Wiley* v. *Corporation of Bluffton, supra ; City of Evansville* v. *Summers,* 108 Ind. 189 ; *Warren* v. *City of Evansville,* 106 Ind. 104 ; *Chamberlain* v. *City of Evansville,* 77 Ind. 542 ; *City of Evansville* v. *Bayard,* 39 Ind. 450 ; *Longworth* v. *Common Council, etc., supra ; Brown* v. *City of Denver, supra.*

It is doubtless true that where the Constitution requires the enactment of a general law, the attempt to amend a general law by a special one would be fruitless ; but where the subject is one which does not require a general law, the question as to what form the legislation shall take is exclusively a legislative one. Here the subject is not one requiring a general law, and hence special amendatory laws may be enacted.

Whether the system of classification adopted by the Legislature is a good or a vicious one is a question with which the courts have nothing to do, inasmuch as the entire subject lies within the legislative dominion, and is excluded from that of the judiciary. If the subject were one demanding a classification, a discussion of that adopted in this instance would be proper ; but, as the subject is exclusively legislative, it is not for the courts to inquire whether the Legislature has acted wisely or unwisely in selecting a standard of classification. Many things may be done by the Legislature that the courts can neither control nor rebuke. Our duty is done and our power exhausted when we adjudge that the general subject, with its incidents and appendages, is one for legislative consideration and decision. If the Legislature has erred in its judgment, its error must be corrected and rebuked by the electors of the State, not by the courts.

The law-making power can not be estopped. Within constitutional limits it is sovereign. Irrepealable laws can not be enacted. Cooley Const. Lim. 146, 148, 343. It neces-

sarily results from these elementary principles that the Legislature, having tried one mode of legislation, is not precluded from trying another.   *State, ex rel.*, v. *Haworth, supra.*   The discussion comes back at last to the question, is the subject one for legislative consideration and judgment? for, if it is, modes and means must be selected by the Legislature, not by the judiciary.

The argument that the title of the act of 1891 is insufficient is fully answered by the adjudged cases.   It is settled beyond controversy that if the title covers a general subject, the act is valid, no matter how minutely it may go into details germane to that general subject.   *Shoemaker* v. *Smith,* 37 Ind. 122 ; *Bitters* v. *Board, etc.,* 81 Ind. 125 ; *Crawfordsville, etc., T. P. Co.* v. *Fletcher,* 104 Ind. 97 ; *Barnett* v. *Harshbarger,* 105 Ind. 410 ; *City of Indianapolis* v. *Huegele,* 115 Ind. 581.

It is insisted that the act of 1891 is so uncertain as to be incapable of enforcement.   This contention rests upon the ground that it can not be ascertained to what city the act will apply.   This position is untenable.   A public law provides for the enumeration of persons between the ages of six and twenty-one years, and the enumeration is for a great public purpose, affecting high public interests.   Elliott's Supp., section 1273 ; sections 4441, 4450, 4472, 4475, R. S. 1881. These are, therefore, official acts to which the court may resort for information. *State, ex rel.,* v. *Gramelspacher,* 126 Ind. 398, and authorities cited p. 403.   Those acts are required by legislative enactment, and that enactment was, we know, passed in obedience to the constitutional provision enjoining upon the Legislature the duty of encouraging and providing for a great educational system.   We are far within the authorities in holding, as we do, that for the purpose of upholding the statute, and giving it effect, we may justly declare that there is here no such uncertainty as requires its overthrow and the defeat of the legislative purpose.

The decision in *State, ex rel.*, v. *Blend,* 121 Ind. 514, fully

disposes of the point that immunities are conferred upon a favored class of citizens to the exclusion of others, by declaring, as it does that such provisions may be eliminated without impairing the validity of the act in so far as it relates to questions such as those presented by this record.

Judgment affirmed.

Filed Dec. 17, 1891; petition for a rehearing overruled Feb. 20, 1892.

### DISSENTING OPINION.

McBRIDE, J.—The opinion of the majority of the court affirms the validity of the act of March 4th, 1891, which purports to be an amendment to the act of March 5th, 1883, Elliott's Supp., section 705 *et seq.*, known as the "Metropolitan Police" law. As I understand the opinion, it is based mainly upon the assumption that the case of *Gentile* v. *State*, 29 Ind. 409, together with a long line of cases since decided, purporting to follow it, establish the proposition that section 23 of article 4 of the Constitution of the State, which is as follows : "In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform application throughout the State,"—leaves it to the Legislature alone to determine whether a law on any given subject, not enumerated in section 22, can be made applicable to the whole State, and that the determination and judgment of the Legislature in such cases is conclusive, and not subject to review by the courts. This premise being assumed, the court declines to entertain or consider the objection that the act in question is in violation of the provision above quoted from the Constitution, holding that by the rule of *stare decisis* that question is put at rest.

While entertaining the most profound respect for the learning and ability of my associates, I find myself unable to concur in the conclusion reached by them. I have not considered, nor have we any right to consider, any question as to the

wisdom of this legislation, or the motives of the Legislature in enacting it. We are bound to assume that they all acted from pure motives, and that none of them so far forgot their duty, as argued by counsel, that they sought to gain a partisan advantage instead of to advance the public good. We can properly consider but one question—is the law such a law as the legislature has the power, under the Constitution, to enact? If it is, all questions as to its wisdom or its propriety belonged solely to the Legislature. Nor can we legitimately consider whether or not the framers of the Constitution acted wisely in placing the power of construing it where they did.

We can only inquire, where has the Constitution placed the power of construing this one of its provisions? If in the Legislature, it is well, and they alone must exercise it. If in the courts, we *dare* not shrink from discharging the duty.

The Constitution is the supreme law, enacted by the people, and, under Federal authority, constitutes the only limitation upon legislative power. It is our duty to support and faithfully to construe it.

The following are the principal grounds upon which I am compelled to dissent from the principal opinion.

1st. In so far as the rule which it is assumed has been declared in *Gentile* v. *State, supra,* is concerned, the question was not necessarily before the court in that case. In my opinion, all that was there said upon that subject was *obiter dictum.*

I am impelled to this conclusion because the court, in deciding that case, expressly decided that the law then under consideration was *general*, and *not* special. It would seem to be clear that, if the law was general, it presented no question as to the power of the Legislature to decide upon the necessity for a special law.

2d. No case has ever since that time been decided by this

court which necessarily involved that question, or necessarily required the court to decide it.

It is true the case has been frequently cited and quoted, and in many cases that doctrine, has been asserted as affording one of the grounds upon which the case could be decided; but a careful examination of all those cases will, I think, show that the court in each case affirms the existence of other grounds sufficient to lead the court to the same conclusion. Those cases, and, indeed, all of the cases decided by this court since, and including, the case of *Gentile* v. *State, supra,* involving any question as to the power of the Legislature in the enactment of local legislation, may be grouped as follows:

1st. Those where this court has held that the law assailed is in fact general, and not special. *Gentile* v. *State, supra; State* v. *Hockett,* 29 Ind. 302; *State* v. *Boone,* 30 Ind. 225; *Stuttsman* v. *State,* 57 Ind. 119; *Hanlon* v. *Board, etc.,* 53 Ind. 123; *Groesch* v. *State,* 42 Ind. 547; *City of Indianapolis* v. *Huegele,* 115 Ind. 581; *State, ex rel.,* v. *Reitz,* 62 Ind. 159; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426; *State, ex rel.,* v. *Blend,* 121 Ind. 514, and many other cases.

2d. Those where the Constitution expressly authorizes special legislation; as, *Longworth* v. *City of Evansville,* 32 Ind. 322; *Wiley* v. *Corporation of Bluffton,* 111 Ind. 152; *Clem* v. *State,* 33 Ind. 418; *Vickery* v. *Chase,* 50 Ind. 461, and other similar cases.

3d. Where the subject of the legislation is so obviously local that it is self-evident that the law enacted must of necessity be local, and that a general law can not be made applicable. *Marks* v. *Trustees, etc.,* 37 Ind. 155; *Kelly* v. *State, ex rel.,* 92 Ind. 236; *Johnson* v. *Board, etc.,* 107 Ind. 15; *Mount* v. *State, ex rel.,* 90 Ind. 29, and many other cases similar in principle.

In this class would fall all of that class of legislation known as " curative statutes." Especially those legalizing the incorporation of towns, and the acts of their boards of

trustees, where their validity is rendered doubtful by some neglect or informality on the part of some officer or other person. As a rule, in each case the specific act of negligence or informality, and consequent evil to be remedied, is so plainly local as to bring it within the rule stated in *Marks* v. *Trustees, etc., supra.* In that case WORDEN, J., while referring to the Gentile case, expressly refrained from following or expressing an opinion upon it, placing the decision upon the ground above stated, thus recognizing as correct the principle that where the subject of the legislation is purely local there is no necessity for invoking that rule.

If the foregoing grouping of cases is correct (about which I have no doubt), and it should now be decided that the rule laid down in *Thomas* v. *Board, etc.,* 5 Ind. 4, and *Maize* v. *State,* 4 Ind. 342, was the correct rule, and that *Gentile* v. *State, supra,* was not correctly decided, it would not result in overthrowing a single adjudicated case,—not even *Gentile* v. *State, supra,* itself; that case being, as the court there holds, correctly decided on other grounds. Indeed, it may be questionable if the statement in that case has in this State ever been adopted under such circumstances as made it authority in the true sense of that term.

In the original case it was certainly *obiter dictum.* The maxim of *stare decisis* applies only to points arising and actually decided in causes. Sutherland Stat. Const., section 320.

A *dictum*, as long as it remains a mere *dictum*, does not pass into precedent, and is not authority. Wells Res Adjudicata and Stare Decisis, section 583.

It is undoubtedly true that a *dictum*, if it be adopted and declared as the law in a case where the question is properly involved, and before the court for adjudication, becomes authority. It then ceases to be a *dictum*. But the mere fact of its repetition and recognition, in cases which do not require or authorize an actual adjudication upon the principle involved, can not change its character or make it authority.

The State, *ex rel.* City of Terre Haute, *v.* Kolsem *et al.*

As long as it remains an extra-judicial utterance, it can never raise the bar of *stare decisis*.

For this court to return to the true rule and disapprove the error of the Gentile case, while it would involve the disapproval of a similar declaration in many cases, would not, as I have said, involve the actual overruling of any case, for the reason that the decisions do not rest upon that ground alone. Nor would it unsettle a title, or affect the validity of any other act of the Legislature.

I fully appreciate the value of the rule of *stare decisis*. It is of the utmost importance that there be permanence and stability in the rules of law, and that principles of law authoritatively announced by courts of last resort, and long acquiesced in, should not be lightly set aside. When, however, it becomes apparent that there has been error, the consequences of which may be serious and harmful, unless the erroneous rule has become a rule of property, courts seldom hesitate to retrace their steps and correct the wrong. This is especially true when the error consists in a misinterpretation of the fundamental law, as in such cases there is no other available remedy. The Constitution being the measure by which alone we must determine the validity of laws, if we err in interpreting the Constitution, the error, while persisted in, can have no remedy short of a change in the Constitution itself by the people. Therefore, this court, in the case of *Robinson v. Schenck*, 102 Ind. 307 (320), speaking by ELLIOTT, J., said : " The rule of *stare decisis* has been held not to apply with its usual force and vigor to decisions upon constitutional questions. In a case not unlike the present it was decided that ' the rule of *stare decisis* applies when a decision has been recognized as a law of property, and conflicting demands have been adjusted, and contracts made with reference to and on faith of it ; but not to questions involving the construction and interpretation of the organic law, the structure of the government, and the limitations upon the leg-

islative and executive power.' *Willis* v. *Owen,* 43 Tex. 41."
Another court announces a similar conclusion, and assigns
this among the reasons for its conclusion : "That upon a
constitutional question as to which we have no doubt, we
can not follow a former decision against our present convic-
tion, for the reason that to do so would violate our oath to
support the Constitution." *Kneeland* v. *City of Milwaukee,*
15 Wis. 454 (520).

It is true that the rule of the Gentile case has been recog-
nized by the courts of some of the other States, while it has
been repudiated by some.

The apparent recognition in some of the States, however,
is due to the fact that in some of the State constitutions are
provisions expressly submitting the question of the applica-
bility of general laws to the judgment of the Legislature.
Of course where that is done there is no room for contro-
versy.

It is also significant to note in this connection the con-
stant and persistent recurrence of this question, and its sug-
gestion to and by this court, during all the years, from the
decision of *Gentile* v. *State, supra,* down to the present, to-
gether with the care taken by the Legislature, in framing
laws where a question of this character might arise, to give
them at least the form of general laws.   It indicates a gen-
eral feeling in the bar, the courts, and the Legislature itself
that the question was not foreclosed by adjudication.   If the
law was indeed adjudicated and settled as now claimed, and
if the adjudication was so sweeping and conclusive, all ques-
tions as to special legislation on subjects not enumerated in
section 22, article 4, of the Constitution are mere questions
of legislative expediency, to be determined by the exercise of
legislative discretion alone, and there has not been since the
Gentile case was decided, in 1868, even a possibility of find-
ing room for judicial interpretation or construction relating
to the exercise of that legislative discretion.

3d.  Sections 22 and 23 of article 4 of the Constitution

were enacted by the people as restrictions upon the power of the Legislature.

A constitutional restriction upon legislative action is utterly without vitality or binding force, unless the Constitution clothes some branch of the State government with the power to enforce it.

That power is, by both Federal and State constitutions, lodged in the courts. They alone can make the ultimate decision as to the constitutionality of *all* legislative acts, whenever those acts become the subject of judicial controversy.

The force of the foregoing propositions can only be escaped by denying that section 23 is a restriction upon legislative action. If it is not, it is mere surplusage and should be stricken from the Constitution. The Constitution confers no power of any character upon the Legislature. So far as that body is concerned, the *only* effect of the Constitution is to limit, and not to confer or extend power.

The debates in the constitutional convention show that much time was there spent in discussing the evil of special legislation, and that sections 22 and 23 were inserted to remedy that evil.

In *Maize* v. *State*, 4 Ind. 342, decided at the November term, 1853, this court said of these sections : " These provisions are all in the nature of restrictions on the legislative authority. * * * The evil to be remedied by sections 22 and 23, above quoted, was the local and special legislation so prevalent under the old system. It had grown into such magnitude that counties, townships, and even school and road districts, had special laws for the management of their local affairs. * * * To remedy these evils—to restore the State from being a coterie of small independencies, with a body of local laws, like so many counties palatine, to what she should be, and was intended to be, a unity, governed throughout her borders on all subjects of common interest, by the same laws, general and uniform in their operation—

the restrictions in sections 22 and 23 were embodied in the Constitution."

In *Thomas* v. *Board, etc.*, 5 Ind. 4, decided at the May term, 1854, the court said : " It is, however, insisted that the Legislature have decided a general law to be inapplicable to the case under consideration ; that from this decision there is no appeal ; and that, therefore, it is not competent for this court to decide upon the validity of the law in question. If that position be correct, the 23d section has no vitality ; nor is there any reason why it should have a place in the Constitution. It would impose no restriction upon the action of the Legislature, nor confer any power which that body would not possess in the absence of such a provision. If that section permits the Legislature to enact a special or local law *ad libitum,* in any case not enumerated, the principle involved would deprive this court of all authority to call in question the correctness of a legislative construction of its own powers under the Constitution. We are not prepared to sanction this doctrine. The maxim ' that parliament is omnipotent ' has no place in American jurisprudence.

" Whether the Legislature have, in the case at bar, acted within the scope of their authority, is, in our opinion, a proper subject of judicial inquiry."

These two cases were decided so soon after the adoption of the new Constitution that they may be regarded as practically contemporaneous with its adoption. One of the judges composing the court at that time, and concurring in the opinion in *Thomas* v. *Board, etc., supra* (the late Governor Hovey), was also a member of the convention which framed the Constitution. The interpretation thus given to these provisions of the Constitution stood, apparently acquiesced in and unchallenged, for fifteen years, until it was questioned and, it is claimed, overruled by *Gentile* v. *State, supra.*

A writer on this subject says : "A construction of a Constitution, if nearly contemporaneous with its adoption, and followed and acquiesced in for a long period of years after-

wards, is never to be lightly disregarded, and is often con-
clusive." Sutherland Statutory Construction, section 307.
Many eminent authorities are cited in support of the text.

In *Gentile* v. *State,* *supra,* the court declares that section
23 *is* a restriction upon legislative power, and " was intended
to prohibit the passage" of local laws, where a general law
could be made applicable, but holds that the actual restric-
tion and prohibition is to be found in the consciences of the
individual legislators. The so-called restriction thus becomes
a mere admonition. The evident object sought to be at-
tained by the adoption of this provision of the Constitution
was to *prevent,* or, as the court says in that case, to *prohibit,*
local and special legislation—not simply to advise against it.

The language is mandatory : " Where a general law can
be made applicable, all laws *shall* be general, and of uniform
operation throughout the State." To say that the Legislature
is the sole judge, whether in a given case a general statute can
be made applicable, makes it merely monitory, and not man-
datory. Such a rule is a clear and wide departure from the
general rule that the courts are the sole final tribunals au-
thorized under our system of government to pass upon the
constitutionality of laws. It can only be sustained, as I have
heretofore said, by denying the restrictive character of sec-
tion 23. There is no escape from the conclusion that if that
section is to operate as an actual restriction, the courts must
ultimately apply it.

Judge Story says : " The power to construe the Constitu-
tion is a judicial power." 1 Story Constitution, section 376.
" The universal sense of America has decided that in the
last resort, the judiciary must decide upon the constitution-
ality of the acts and laws of the general and State govern-
ments, so far as they are capable of being made the subject
of judicial controversy." 2 Story Const., section 1576. See,
also, to the same, effect, 1 Kent Com., 420–426.

Chief Justice MARSHALL says : "The judicial power of
every well constituted government must be co-extensive with

the legislative, and must be capable of deciding *every judicial question which grows out of the Constitution and laws.* If any proposition may be considered as a political axiom, this, we think, may be so considered." *Cohens* v. *Virginia,* 6 Wheaton, 264. See, also, *Bank of Hamilton* v. *Dudley,* 2 Peters, 492, where he says: "The judicial department of every government is the rightful expositor of its laws; and emphatically of its supreme law."

Of this power of the courts Judge Cooley says: "The right and the power of the courts to do this are so plain, and the duty is so generally—we may almost say universally—conceded, that we should not be justified in wearying the patience of the reader in quoting from the very numerous authorities upon the subject." Cooley Constitutional Limitations (3d ed.), 45.

The Supreme Court of Pennsylvania, per GIBSON, C. J., says: "It is idle to say the authority of each branch is defined and limited in the Constitution, if there be not an independent power able and willing to enforce the limitations. Experience proves that it is thoughtlessly but habitually violated; and the sacrifice of individual right is too remotely connected with the objects and contests of the masses to attract their attention. From its every position, it is apparent that the conservative power is lodged with the judiciary, which, in the exercise of its undoubted right, is bound to meet every emergency." *De Chastellux* v. *Fairchild,* 15 Pa. St. 18.

Daniel Webster says: "The Constitution being the supreme law, it follows, of course, that every act of the Legislature, contrary to that law, must be void. But who shall decide this question? Shall the Legislature itself decide it? If so, then the Consitution ceases to be a legal, and becomes only a moral restraint on the Legislature. If they, and they only, are to judge whether their acts be conformable to the Constitution, then the Constitution is admonitory or advisory only; not legally binding; because, if the construction

of it rest wholly with them, their discretion, in particular cases, may be in favor of very erroneous and dangerous constructions. Hence the courts of law, necessarily, when the case arises, must decide upon the validity of the particular acts. * * *Without this check, no certain limitation could exist on the exercise* of legislative power." The Independence of the Judiciary, Webster's Works, vol. 3, p. 30.

In view of the contention in this case, the language of Mr. Webster is especially significant and forceful. Quotations of similar tenor from equally eminent authority might be greatly extended.

I confess that I do possess profound respect for the sages of the law above quoted, whose eminence as jurists and whose grasp of the principles of statesmanship were leading factors in laying and cementing the foundations of our national stability. When I find them asserting the power and duty of the courts, not only to construe, but to apply and enforce *all* constitutional restrictions and limitations upon legislative power, and find as the solitary dissent from that doctrine the rule here asserted, I am constrained to follow their lead. They declare that the courts alone must apply the measure of the Constitution to all laws. They assert the necessity for an independent power, able and willing to enforce the limitations upon legislative power, and that without such check no such limitation can exist. They tell us that that power exists in the courts alone. Section 23 does impose a limitation or restriction upon that power, and I am compelled to choose between their opinion that the courts must enforce the limitation, and the opinion which we are here asked to reaffirm, that the Constitution has provided no tribunal for its enforcement but the consciences of the individual legislators. On *my* conscience I must follow the former.

4th. The invalidity of the law in question, as an act of special legislation (if it is special), is, however, easily determinable upon other grounds, entirely consistent with *Gen-*

*tile* v. *State, supra*, and requiring no disapproval of the rule we have been considering.

That rule is, that the Legislature is the sole judge of the necessity for a special law in any given case. Hence, its enactment of a special law is a legislative declaration that a general law can not in that case be made applicable, and such declaration is final and conclusive. The act here in question purports to be a *general*, and not a special law. It is evident that the Legislature purposely gave it that form. If the enactment of a local law is a conclusive legislative determination that a local law is necessary, the enactment of that which purports to be a general law is equally conclusive as, a legislative declaration that a general law can be made applicable, and that a special law is not necessary. The question does not rest here, however.

An author who assumes the existence of the rule laid down in *Gentile* v. *State, supra*, and gives it as being settled by authority, lays down the following additional rule : " If a general law exists which is applicable to a subject, the question whether such a law can be made applicable is resolved. The Legislature has by the enactment of a general law practically decided the question. Hence if, while such a general law is in force, a special or local law is passed affecting the same subject and modifying the general law, the question of its validity is judicial ; it will be held invalid in the case supposed, for an applicable general law being in existence, it is no longer a question whether such a law can be made applicable ; therefore the special or local law is prohibited." Sutherland Stat. Con., section 118.

The cases cited by the author fully sustain the text. It is also sustained by *Robinson* v. *Perry*, 17 Kan. 248 ; *Darling* v. *Rodgers*, 7 Kan. 592 ; *Gray* v. *Crockett*, 30 Kan. 138.

I believe no case exists conflicting with this principle, nor does it conflict with any established rule of law.

The act of the Legislature here in question was enacted as an amendment to the " metropolitan police " law of 1883.

The State, *ex rel.* City of Terre Haute, *v.* Kolsem *et al.*

While this court has firmly maintained the right of local self-government in municipal corporations, it has recognized as an exception to the exercise of that right the power of the State to prescribe and control the manner of selecting the constabulary, including the police force of a city.

The act of 1883 was enacted in the legitimate exercise of that power. While it only applies to certain cities in the State, those cities being classified according to population, the classification adopted has, as will presently appear, been recognized as legitimate, as applied to such a law, and the law itself is general, and not special or local. Its validity has been several times recognized by this court. *City of Indianapolis* v. *Huegele, supra; State, ex rel.,* v. *Blend, supra; State, ex rel.,* v. *Denny,* 118 Ind. 382; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426.

Therefore, by legislative declaration, and by judicial recognition, it is, and was, when the act now in controversy was adopted, conclusively settled that a general law could be made applicable to the subject of this particular legislation, the act in question being a mere amendment to a general law, then in operation, and which had been in successful operation for years. There was no room for any legislative adjudication as to the applicability or non-applicability of a general law.

The question remains, in either case, is the law now under consideration general, or is it special and local in its character?

The several subdivisions of the State, and its municipalities, may be classified, and laws enacted which will affect differently the several classes, and thus be in a sense local, and yet such laws are general within the meaning of the Constitution.

Thus, in Pennsylvania, where the Constitution prohibited special legislation for regulating the affairs of counties, cities, etc., the Supreme Court of that State in *McCarthy* v. *Commonwealth, ex rel.,* 110 Pa. St. 243 (246), says: " It is admitted

that classification, even when not specially recognized by nature, custom, the laws of trade, or the constitution, must in certain cases, be adopted *ex necessitate.* * * General legislation for all the cities of the Commonwealth as a single class, having been regarded as impossible, the Legislature first divided these municipalities into several distinct classes, and then provided laws and regulations adapted to each class.  This, as we have seen, was recognized as legitimate and proper."

In *Nichols* v. *Walter,* 37 Minn. 264, it is said :  " It must be conceded that where a general law, uniform in its operation, is required, the law is none the less general and uniform because it divides the subjects of its operation into classes, and applies different rules to the different classes. For the purpose of efficient and beneficial legislation it is often necessary to do so."  See, also, *Hanlon* v. *Board, etc., supra.*

As we have elsewhere said, in recognition of this principle, this court has sustained, as general, laws classifying counties according to population for the grading of salaries of certain county officers, and the metropolitan police law itself similarly classifies cities.   That a law classifying the objects of legislation may, indeed, be general, but not within the inhibition of sections 22 and 23 of article 4, it is not enough that the classification be made merely in accordance with certain features common to all, but the classification must bear some definite relation to the purpose sought to be accomplished by the legislation.

A mere arbitrary classification, based on features which, although common to all, bear no relation to the subject-matter of the legislation, will not suffice.

This question has probably received more thorough consideration from the Supreme Court of New Jersey than from the court of any other State.   In *Warner* v. *Hoagland,* 51 N. J. L. 62 (68), it is said, quoting approvingly from an earlier decision by the same court:  "A law is to be re-

garded as general when its provisions apply to all objects of legislation, distinguished alike by qualities and attributes which necessitate the legislation or to which the enactment has manifest relation. Such law must embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class."

In the case of *State, ex rel.,* v. *Hammer*, 42 N. J. L. 435, it was urged upon the court that a certain law did not contravene a constitutional provision prohibiting the enactment of local or special laws to regulate the internal affairs of towns and counties, because it was general in its terms, and embraced " all of a group of objects having characteristics sufficiently marked, and distinct to make them a class by themselves."

In a well-considered opinion the court held the law invalid, as in fact special. The court says, page 440 : " Plainly, a law may be general in its provisions, and may apply to the whole of a group of objects, having characteristics sufficiently marked and important to make them a class by themselves, and yet such law may be in contravention of this constitutional prohibition. Thus, a law enacting that in every city in the State in which there are ten churches, there should be three commissioners of the water department, with certain prescribed duties, would present a specimen of such a law, for it would sufficiently designate a class of cities, and would embrace the whole of such class, and yet it does not seem to me that it could be sustained by the courts. If it could be so sanctioned, then the constitutional restriction would be of no avail, as there are few objects that can not be arbitrarily associated, if all that is requisite for the purpose of legislation is to designate them by some quality, no matter what that may be, which will so distinguish them as to mark them as a distinct class. But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of

such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

The Supreme Court of Minnesota, in *Allen* v. *Pioneer-Press Co.*, 40 Minn. 117–120, says : "Laws public in their objects may be confined to a particular class of persons, if they be general in their application to the class to which they apply, provided the distinction is not arbitrary, but rests upon some reason of public policy growing out of the condition or business of such class."

In *McCarthy* v. *Commonwealth, supra,* the Supreme Court of Pennsylvania, speaking of arbitrary or illusory classification, says : "If, indeed, such legislation were to be recognized as legitimate, vain would be the constitutional prohibition of local or special laws. But little ingenuity in the way of so-called classification would be necessary in order to isolate every single county, borough, ward, township and school district in the State and provide for each its own local code."

See, also, *Randolph* v. *Wood*, 49 N. J. L. 85; *Paul* v. *Judge, etc.*, 50 N. J. L. 585; *State Board, etc.*, v. *Central R. R. Co.*, 48 N. J. L. 146 (278); Sutherland Statutory Construction, sections 127, 128, 129 and cases cited; *Zeigler* v. *Gaddis*, 44 N. J. L. 363; *Bone* v. *State*, 86 Ga. 108; *Mortland* v. *State, ex rel.*, 52 N. J. L. 521; *State* v. *Board, etc.*, 52 N. J. L. 302.

In *State, ex rel.*, v. *Boyd*, 19 Nev. 43, the court in considering a similar question, says : "In order to observe the uniformity required by the Constitution, classification, if made, must be based upon reasonable and actual differences ; the legislation *must be appropriate to the classification*, and em-

brace all within the class." See, also, *Turner* v. *Fish*, 19 Nev. 295; *State, ex rel.,* v. *Hermann,* 75 Mo. 340; *Commonwealth ex rel.,* v. *Patton,* 88 Pa. St. 258. In the case last cited the court asserts that there can be no proper classification of cities or counties except by population. *State, ex rel.,* v. *Ellet,* 47 Ohio St. 90.

. So far as classification has heretofore been resorted to in the legislation of this State, it has been strictly within the limits recognized as legitimate in the cases above cited, and it has met with judicial approval. It is not difficult to understand how increase of population in a county leads to increase in the duties imposed upon its officers, adds to their responsibilities and labor, and demands a higher grade of talent to meet the added duties. Hence, good and sufficient reasons for grading salaries of officers in accordance with population. So, also, it is easy to trace a definite connection between increasing urban population and increase of crime. We are authorized to take judicial notice of the fact that as the population of the city increases, whether the ratio of increase in the criminal element exceeds that of the non-criminal or not, the confederation of criminals thus brought about makes them relatively more powerful and dangerous, and more difficult of control. Hence the need of increased police protection, and the especial need of placing the control of the police force beyond the danger of intimidation, corruption, or control by that element.

But what possible connection can exist between school children or those of "school age" and crime? Except so far as an increase in the number of school children may serve to indicate in some degree an increase of population, can it be said that such increase affords any index to the growth of the criminal class? Manifestly not. As an indication of the growth of population, even, it is illusory, for the reason that it does not necessarily indicate the number of resident school children. They are not enumerated according to residence. Parents residing in one school corporation

may, on request, be transferred for school purposes to another and enumerated there, regardless of their residence. R. S. 1881, sections 4472–4475. This may, and frequently does, result in giving to a given school corporation an enumeration greatly in excess of or greatly below the number actually resident therein. In the same way and for the same reason a classification on any such basis lacks the permanency of a classification based on the population as shown by the decennial census, as the enumeration is made each year. In my judgment a classification of cities according to the enumeration of school children therein for the purpose of determining the necessity of subjecting the police force of such cities to control by the State is arbitrary, illusive, and not warranted by the Constitution. Such a classification bears no more relation to the avowed object of the legislation, and no more serves to account for or justify it, than would a classification based on the number of churches in the city, or the number of iron pumps or street lamps. We have a law requiring a quadrennial enumeration of the surviving soldiers and sailors of the State, and placing the report on file with the Adjutant General; also, laws requiring the report and registry of marriages, births and deaths; also, laws requiring an annual enumeration and registry of the dogs of the State; and a classification based on any of these could be sustained with quite as good reason. The opinion, as I understand it, also holds that we may take judicial notice of the enumeration of school children and their number in the different localities of the State. If the court is right in this we must judicially know that the law, instead of applying to a class of cities throughout the State, distinguished by certain characteristics bearing relation to, or requiring such legislation, in fact applies to but one city in which, so far as we know, or so far as the legislative declaration informs us, nothing exists requiring, or even remotely suggesting any necessity for it. The decision in this

The State, *ex rel.* City of Terre Haute, *v.* Kolsem *et al.*

case goes beyond that of *Gentile* v. *State, supra,* and effectually expunges section 23 from the Constitution.

With the concession of the power to make such an amendment to a general law, even the mythical court of "conscience," which *Gentile* v. *State, supra,* assumed existed, disappears.

Filed Dec. 17, 1891; petition for rehearing overruled'Feb. 20, 1892.

## DISSENTING OPINION.

OLDS, J.—In my judgment the opinion in the case of *Gentile* v. *State, supra,* enunciates an erroneous doctrine, in holding that it is for the Legislature alone to judge whether a law on any given subject not enumerated in section 22, article 4, of the Constitution can be made applicable to the whole State. It in effect annuls section 23 of article 4 of the Constitution, and permits the Legislature to enact local laws at will, notwithstanding the Constitution declares such laws can not be passed when a general law can be made applicable; and I am not willing to extend the doctrine or apply it, except possibly in a case coming clearly within the provisions of that opinion. I think the law under consideration in this case, if upheld, is an extension of the doctrine, and recognizes an unlimited right to pass local laws singling out any particular town, city, township or county of the State, and pass a law applicable to such town, city, township or county ; and I think there are other valid objections to the validity of the law fully stated in the dissenting opinion of McBRIDE, J. I therefore dissent from the opinion of the majority of the court.

Filed Dec. 17, 1891.