Price et al v. Huey.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.

*W. E. Niblack* and *W. H. De Wolfe*, for the appellant.

*C. M. Allen, N. Usher,* and *D. McDonald*, for the appellees.

————◇◆◇————

## PRICE *et al. v.* HUEY.

WILL—SALE BY TRUSTEE—CURATIVE STATUTE.—In *February*, 1851, *A*, a *feme covert*, made her last will, which contained the following item : "I give and bequeath to my husband, *B*, the house and lot in *Y*, now occupied by us, being the same lot conveyed to me by my mother *C*, late of *Y*, deceased, bearing date *September* 15, 1840, for and during the natural life of said *B*, upon the condition that the said *B*, in a suitable, proper and fatherly manner, provide for, and take care of our unfortunate daughter *D*, during their joint lives. And if in the judgment of the said *B*, at any time after my decease, it shall be necessary to the comfortable support of either the said *B* or *D*, that the aforesaid house and lot be sold, then I do hereby authorize and empower him, the said *B*, to sell and convey the same in fee simple, the same as he would were the same premises bequeathed to him in fee simple by me; and in that case my will is that the avails of the said property sold, be applied in part or in whole, as the circumstances of the said *B* and *D*, or either of them, may require, by the said *B*, to his and her comfortable support, according to his best judgment. In case the said *D* shall survive her father, the said *B*, and the premises described above be

unsold, at the time of his death, then I give and bequeath to our daughter *E*, in fee simple, the premises described above, upon the same conditions as above imposed upon my husband, the said *B*, provided that the said *E* shall be in suitable circumstances, and is willing to take upon herself the charge of said *D*. But should the said *E*, then not be in suitable circumstances, or be unwilling to take the care and support of the said *D* upon herself, then I give and bequeath the aforesaid premises to our son *F*, upon the same conditions as aforesaid; and shall he not take upon himself the charges aforesaid, then I give and bequeath the premises to our son *G*, upon the same conditions. And if all these persons shall fail to accept the bequest, and take upon them the charge of said *D*, as aforesaid, then I ordain that the said property shall be applied, under the instructions of the proper legal authority, to the comfortable maintenance and support of the said *D*," &c. *A* died in *March*, 1851. In *June*, 1852, the trust and power created by her said will passed, according to its terms to *F*. On the 16th of *November*, 1852, the said *F* and *D*, being then residents of *I*, the said *F*, for the purpose of carrying out the objects of said trust exchanged said property in *Y* to one *W*, for property in *I*, and took a deed from him for the same in fee, providing therein expressly that the same should be held by said *F*, "under the same restrictions, and subject to the same conditions in reference thereto, as those imposed upon" him by said last will, concerning said trust, which deed was recorded *January* 27, 1853, of all which the defendants below had full notice; and on the 28th of *October*, 1853, the said *F*, conveyed said property in *I* to one *J*, under whom the said defendants hold. In *March*, 1857, said *F*, the trustee under the will of said *A* died; and on the 30th of *July*, 1858, *H*, the plaintiff below, was appointed, by the *M* Court of Common Pleas, successor in the trust to said *F*, deceased. At the *March* term, 1862, said *H* commenced an action in the Court below, to recover possession of the property in *I*, which was taken by *F*, the former trustee, from *W*, in exchange for the property in *Y*, bequeathed in trust for the support of the said *D*. *H* concedes the validity of the exchange between *F* and *W*, admits that the title of the *I*

property passed to *F*, and puts the case upon the ground that *H* was powerless to afterwards divest himself of it.

QUÆRE.—Whether the will authorized the exchange of the *I* property for real estate situated any where.

*Held*, that *F* had the power to sell the real estate in *I*, if the exigencies of the trust, created by the will, required a sale; hence *bona fide* purchasers, that is, purchasers, ignorant of the propriety or not, of the sale would hold independent of the curative statute of *March* 7, 1863. Acts 1863 p. 16.

*Held*, also, that if *F* acted erroneously, but honestly in making such sale, the curative statute healed up the consequences of such error as to all persons.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—In *February*, 1851, *Caroline Jones*, of *Youngstown, Ohio*, being a *feme covert*, made her last will, which contained the following item:

"I give and bequeath to my husband, *Ira Jones*, the house and lot in *Youngstown*, now occupied by us, being the same lot conveyed to me by my mother, *Lucy Edwards*, late of *Youngstown*, deceased, bearing date *September* 15, 1840, for and during the natural life of said *Ira Jones*, upon the condition that the said *Ira Jones*, in a suitable, proper and fatherly manner, provide for and take care of our unfortunate daughter, *Lucy Jones*, during their joint lives. And if, in the judgment of the said *Ira Jones*, at any time after my decease, it shall be necessary to the comfortable support of either the said *Ira Jones*, or *Lucy Jones*, that the aforesaid house and lot be sold, then I do hereby authorize and empower him, the said *Ira Jones*, to sell and convey the same in fee simple, the same as he would do were the same premises bequeathed to him in fee simple by me; and in that case, my will is that the avails of the said property sold be applied in part, or in whole, as the circumstances of the said *Ira* and *Lucy*, or either of them, may require, by the said *Ira Jones*,

Price et al. *v.* Huey.

to his and her comfortable support, according to his best judgment. In case the said *Lucy Jones* shall survive her father, the said *Ira Jones*, and the premises described above be unsold at the time of his death, then I give and bequeath to our daughter, *Cornelia Jones*, in fee simple, the premises described above, upon the same conditions as above imposed upon my husband, the said *Ira Jones*, provided that the said *Cornelia* shall be in suitable circumstances, and is willing to take upon herself the charge of said *Lucy*. But, should the said *Cornelia* then not be in suitable circumstances, or be unwilling to take the care and support of the said *Lucy* upon herself, then I give and bequeath the aforesaid premises to our son, *Albert Jones*, upon the same conditions as aforesaid; and shall he not take upon himself the charges aforesaid, then I give and bequeath the premises to our son, *Ira Jones*, upon the same conditions. And if all these persons shall fail to accept the bequest, and take upon them the charge of said *Lucy* as aforesaid, then I ordain that the said property shall be applied, under the instructions of the proper legal authority, to the comfortable maintenance and support of the said *Lucy Jones*. In case the said *Lucy* shall survive her father, the said *Ira Jones*, and, at the time of his death, the property aforesaid has been sold, then I will and ordain that such portion of the avails of said property, as shall remain unexpended, shall be offered to the aforesaid *Cornelia Jones*, to be faithfully applied by her to the comfortable maintenance and support of the said *Lucy Jones;* and if the said *Cornelia* be not in suitable circumstances to take charge, or declines to accept the property on these conditions, then I ordain that the same tender be made to our son, *Albert Jones;* and if he declines its acceptance and charge, then that it be offerred on the same terms to our son, *Ira Jones;* and if all decline the property and charge, then I ordain that the proper legal authority take charge of the property and faithfully apply all

of it to the comfortable support and maintenance of our said daughter, *Lucy Jones.*" .

In *March,* 1851, *Cornelia* died. In *June,* 1852, the trust and power created by her said will, passed, according to its terms, to *Albert Jones.* On the 16th of *November,* 1852, the said *Albert* and *Lucy,* being then residents of *Indianapolis,* the said *Albert,* for the purpose of carrying out the objects of said trust, exchanged the *Ohio* property, with one *Warner,* for property in *Indianapolis,* and took a deed from him for the same in fee, providing therein expressly that the same should be held by said *Albert* "under the same restrictions, and subject to the same conditions in reference thereto, as those imposed upon" him by said last will, concerning said trust, which deed was recorded *January* 27, 1853, of all which the defendants had notice; and on the 28th of *October,* 1853, the said *Albert* conveyed said *Indianapolis* property to one *W. H. L. Noble,* under whom the defendants hold; and they have received the profits therefrom to the amount of 1,000 dollars.

In *March,* 1857, said *Albert Jones,* the trustee under *Cornelia's* will, died; and, on the 30th of *July,* 1858, *Virgil J. Huey,* the plaintiff below, was appointed, by the *Marion* Common Pleas, successor in the trust to *Albert Jones,* deceased.

At the *March* term, 1862, said *Huey* commenced an action in the *Marion* Circuit Court, to recover possession of the property in *Indianapolis* which was taken by *Albert Jones,* the former trustee, from *Warner,* in exchange for the property in *Ohio,* bequeathed in trust for the support of *Lucy Jones.* The ground of his action, as presented by his counsel, is want of power in *Albert Jones,* his predecessor in the trust, to sell the *Indianapolis* property. It is claimed that the sale of the *Ohio* property exhausted his power of sale under the will. It might be doubted whether the will authorized the exchange of the *Ohio* property for other real estate situated any where.

Perhaps it only authorized a sale for "avails" that might, without further sale or exchange, be used for the support of *Lucy;* and were this, in fact, the case, it would follow that no title passed to *Warner* for the *Ohio* property, and that the present plaintiff, as trustee, should have proceeded for that, and not for the *Indianapolis* property, as that would be a matter for the consideration and action of *Warner.* But *Huey's* counsel concede the validity of the exchange between *Jones* and *Warner,* admit that the title of the *Indianapolis* property passed to *Jones,* as trustee, and put their case upon the ground that he was powerless to afterwards divest himself of it. They argue thus:

"It is plain that the will gives no power to sell anything but the *Ohio* property which it devises. The only hint in the will, at any power to sell, is in these words: 'If, in the judgment of said *Ira* at any time after my decease, it shall be necessary to the comfortable support of either the said *Ira Jones* or *Lucy Jones,* that the said house and lot be sold, then I do authorize and empower him to sell and convey the same in fee simple, the same as he would do were the said premises bequeathed to him in fee simple by me; and in that case, my will is that the avails of said property sold be applied, in part or in whole, as the circumstances of the said *Ira* and *Lucy* may require.' Surely, it can not be pretended that, if the sale of this property under this will should happen to be, as it was, for other lands, this provision authorized the sale of these other lands. The other lands are the 'avails' mentioned in the will; and so far from being directed to be sold, they are directed to be 'applied' to *Lucy's* support.

"If, on the face of the will, a doubt remained as to the trust thereby created, attaching on the real estate in controversy, the deed made to *Albert Jones,* under which the appellants claim the said real estate, must remove that doubt. This deed conveys the property to *Albert Jones,* 'under the

same restrictions, and subject to the same conditions in reference thereto, as those imposed on the said' *Albert* 'by the last will and testament of *Conelia Jones*, wife of said *Ira Jones*, of *Youngstown, Mahoning* county, *Ohio*, deceased, in the bequest to' said *Albert*, 'of the lot of land forming the consideration of this indenture, and by virtue of which said will and for the purpose of carrying out the objects therein expressed this transfer is made.' The very deed, therefore, under which the appellants claim the land in question, manifestly and expressly fixes said trust on this land. And here it should be observed that *Warner* could not, by his deed, enlarge the trust created by the will. If, therefore, he had intended by his deed to confer on *Albert Jones* the power to sell the land mentioned in the deed, and thereby free it from the trust, he could not have done so. Therefore, if even the language of the deed would bear the construction that the trustee might, by a sale of the land, free it from the trust, such language in the deed would be of no effect."

Taking the position, then, as a starting point in the case, that the act of *Jones* in exchanging the trust property in *Ohio* for the real estate in question, in *Indiana*, was valid, we think he possessed the power of selling this *Indiana* real estate, for the reason that without such power he might not be able to accomplish the purpose of the trust created by the will. What was that trust, and what the power given to execute it? The trust was to provide a "comfortable maintenance and support" to *Lucy Jones* during her life, and the power was to sell said property and apply the avails of it, "in part or in whole," to that purpose, "according to his [said *Albert Jones*'] best judgment." It was not the use of or income from said property, but the whole of it, the "avails" of the sale of it, that he was to apply if necessary. And if the trustee had a right, which is conceded by the appellee, to receive the consideration of the first sale in specific arti-

cles, the whole of which could not in their given state, be appropriated to her use and support, then he had a right to proceed further, if his best judgment so dictated, and convert those articles, the "avails" of the sale, into that which, in his judgment, could be applied to her support. If he could not do that, then he was empowered by the will to do an act, viz: make a first sale of the property for a consideration that could not be applied to the accomplishment of the trust, which would, in fact, disable him to discharge the very trust created by the will. We can not believe that such should be the construction given to the will.

Another point. An act of the Legislature of *Indiana* took effect on the 7th of *March*, 1863, which provides "that all sales of real estate in this State heretofore made in good faith by trustees, or by domestic or foreign executors, in conformity with the provisions of any deed of trust or will, executed and admitted to probate in this State, or in any other of the *United States*, and for which a full consideration has been paid to the party entitled thereto," are confirmed and made valid, and conveyances made by such trustees to the purchasers are declared to vest in the latter the legal title to the land. Acts 1863, 16.

This was a curative statute; and, if valid, applied to this case, notwithstanding it was enacted *pendente lite.*

Says Chief Justice *Marshall*, in *The United States* v. *The Schooner Peggy:* "It is in general true that the province of an appellate Court is only to inquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment, and before the decision of the appellate Court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, and of that no doubt in the present case has been expressed, I know of no Court which can contest its obligation." 1 Cranch. Rep. 103, S. C.; 1 Cond. Rep. 256.

See as to curative statutes, *The Board, &c.* v. *Bright,* 18 Ind. 93, and the cases collected in *Walpole* v. *Elliott, id.* 258.

In this case, then, the trustee had the power, as an abstract proposition, to sell, if the exigencies of the trust required a sale; hence *bona fide* purchasers, that is, purchasers ignorant of propriety or not, of sale, would hold, independent of the curative statute. And, if the trustee acted erroneously, but honestly, in making the sale it would seem that the curative statute healed up the consequences of the error, as to all persons.

*Per Curiam.*—The judgment below is reversed, with costs. Cause remanded.

*Thos. A. Hendricks, Barbour & Howland,* and *Newcomb & Tarkington,* for the appellants.

*W. P. Fishback,* and *McDonald & Porter,* for the appellee.