SCHNECK *v.* THE CITY OF JEFFERSONVILLE ET AL.

[No. 18,367. Filed Dec. 20, 1898. Rehearing denied Feb. 21, 1899.]

MUNICIPAL CORPORATION.—*Costs Incident to Location of County Seat May be Imposed Upon City Where Located.*—A city receives such special benefits from the location of a county seat within its corporate limits as would justify the legislature, in its discretion, in authorizing the entire burden of the expenses incident to such location to be laid upon the property of such city. *pp. 211, 212.*

SAME.—*Municipality Serves as an Agency for the Legislature.*—A municipal corporation serves but as an agency or instrumentality in

Schneck *v.* City of Jeffersonville.

the hands of the legislature to carry out its will in regard to local governmental functions.  *p. 212.*

MUNICIPAL CORPORATION.—*Aid for Public Improvements.—Location of County Seat.—Statute Construed.*—The location in a city of a county seat and the erection of the necessary county buildings are not "public improvements or public works" within the meaning of section 3152 R. S. 1881, authorizing cities to donate money or bonds in aid of public improvements or public works.  *pp. 212, 213.*

SAME.—*Bonds for the Relocation of County Seat.—Statutes Afford Color of Legal Authority.*—Section 2 of the act of March 9, 1875, (Acts 1875, p. 34,) authorizing county authorities to accept donations towards the expenses of constructing public buildings in connection with the relocation of a county seat, construed with section 3152 R. S. 1881, empowering cities to donate money or bonds in aid of public improvements or public works, did not, in the year 1876, authorize a city to incur a debt for the removal of a county seat and issue bonds therefor; but these sections of the statutes afforded such color of legal authority for the issue of bonds for that purpose that it will be presumed that when such bonds were issued that the common council of the city acted in good faith.  *pp. 212-215.*

CONSTITUTIONAL LAW.—*Legalizing Act.—Municipal Bonds.*—In the absence of constitutional restrictions the legislature has the right to legalize the bonds of a city so long as vested rights have not intervened.  *pp. 216, 217.*

SAME.—*Act Legalizing Jeffersonville City Bonds.*—The act of March 2, 1897, legalizing certain bonds of the city of Jeffersonville did not create a debt of the city greater than two per cent. of the valuation of the property therein, in violation of section 1, article 13, of the Constitution as amended March 14, 1881, but simply legalized the debt which the legislature recognized as having existed before the Constitution was thus amended.  *pp. 221, 222.*

SAME.—*Legalizing Act.—Exercise of Judicial Power by Legislature.*— Where certain bonds have been judicially declared to be invalid, an act legalizing such bonds is not an attempt of the legislature to exercise judicial power in violation of section 1, article 7 of the Constitution, as respects an action involving the validity of such bonds commenced after the passage of the legalizing act.  *p. 225.*

SAME.—*Act Legalizing City Bonds Not Local and Special Legislation.* —An act legalizing city bonds is not unconstitutional as being local and special legislation, since such legislation does not fall within the cases enumerated by section 22, article 4, of the Constitution. *p. 226.*

From the Clark Circuit Court.  *Affirmed.*

*O. H. Montgomery, Merrill Moores, J. K. Marsh* and *C. P. Ferguson & Son*, for appellant.

*George H. Voigt, M. Z. Stannard* and *W. A. Ketcham*, for appellees.

JORDAN, J.—Appellant is a resident of this State, and the owner, as alleged, of valuable real property situated in the city of Jeffersonville, Clark county, Indiana, and a taxpayer of said city. On March 30, 1897, in his own behalf, and, as averred in the complaint, in the behalf of other numerous taxpayers of that city, he instituted this action to obtain an injunction enjoining the city and the members of its common council, and others of its officials, from issuing and selling certain bonds of the city in order to refund an indebtedness of the city of Jeffersonville, evidenced by outstanding bonds previously issued and negotiated by the proper authorities.

Each of the defendants separately demurred to the complaint on the ground that the facts therein alleged were not sufficient to constitute a cause of action. These demurrers were sustained, and the lower court thereby denied the right of appellant, under the facts, to the relief demanded, and this decision is challenged by appellant, under his assignment of errors, and presents the questions involved by the facts set forth in the complaint. The latter discloses the following facts: The city of Jeffersonville is duly incorporated as a city under the general laws of this State relating to the incorporation of cities; and prior to August, 1876, it incurred an indebtedness amounting to $87,000, which was created by the city, and in part arose out of the expenses and costs incident to the removal of the county seat of Clark county from Charlestown, and locating the same in the said city of Jeffersonville, and in part was incurred and created by the city in the purchase of real estate within its limits for a court-house and jail, and the construction thereon of these public build-

.ings, rendered necessary by the change or removal of the seat of justice to its new site.

On August 8, 1876, this indebtedness existed in the character of notes, accounts, and city warrants, no part thereof at that time having been funded. On the date last mentioned the common council adopted an ordinance whereby the funding of said indebtedness of $87,000 was authorized, and negotiable bonds of the city to that amount were directed, under the ordinance, to be issued and negotiated for the purpose of raising money to pay off said indebtedness as it then existed. Accordingly, on August 9, 1876, in pursuance of said ordinance, the city, through its proper officials, issued its negotiable bonds, maturing in twenty years from said date, bearing interest at seven and three-tenths per cent. per annum, and sold them to raise funds for the purpose directed by said ordinance.

On April 21, 1896, in order to refund, at a lower rate of interest, these bonds, which were then still outstanding and about to mature, the common council, under the provisions of the act of the legislature approved March 2, 1895, (Acts 1895, p. 87) passed an ordinance which is set out in full in the complaint. This latter ordinance recites the facts in regard to the issuing and sale by the city in August, 1876, of the bonds in question, and further states that these bonds were issued and sold for the purpose of raising money to pay off certain obligations of the city, which indebtedness it had incurred for public improvements in said city prior to the amendment of the State's Constitution on March 14, 1881, which prohibits any political or municipal incorporation in this State from becoming indebted in any manner or for any purpose to an amount in the aggregate exceeding two per cent. of the value of the taxable property within such corporation. It is further recited in this ordinance that these bonds were a just and legal indebtedness of the city and that their validity had never been called in question. The ordinance also states that the rate of interest which the bonds bear is excessive, and,

as they will become due and payable on August 9, 1896, it is provided and ordained therein that, in order to refund the bonds at a lower rate of interest, and extend the time of payment, the proper city authorities are authorized to issue other bonds to a like amount of those outstanding, to bear date of August 9, 1896, drawing five per cent. interest, etc.

The complaint proceeds to aver that the city, in pursuance of this last mentioned ordinance, unless enjoined, will issue and sell these refunding bonds, as provided by the ordinance, in order to raise money to pay off and redeem the bonds issued in 1876, and it is further alleged that on April 21, 1896, the city of Jeffersonville was, and continuously since that date has been, indebted in excess of two per cent. of the valuation of the taxable property therein. The further charge is made by the pleading that the city had no right or authority to issue the bonds which it is attempting now to refund, and that it has no right or power to refund the same as it is now proposing to do. It is charged in the complaint that the power or authority of the city to issue and negotiate the bonds in question, under the facts, as it originally did, and its right to refund them, as it is proposing to do, were denied by this court in the case of *Meyers* v. *City of Jeffersonville*, 145 Ind. 431.

The complaint then alleges that, after the decision in the latter case, the legislature enacted a statute, approved March 2, 1897, which is entitled: "An act to legalize certain bonds issued by the city of Jeffersonville, and to permit said bonds to be refunded, and declaring an emergency." This statute, which professes to legalize and validate in all respects the bonds in controversy, is set out in the complaint, and the latter then proceeds to assail the validity of this law: (1) That the legislature did not possess the power, under the circumstances, to legalize the bonds in dispute, and to authorize the refunding thereof; (2) that the act, by legalizing the bonds, creates a new debt and thereby renders the city's indebtedness in excess of two per cent. of its taxable prop-

erty, in violation of the said amendment to the Constitution
of March 14, 1881; (3) that this statute is special and local
and for this reason is violative of the Constitution. The
complaint closes with a prayer that the city and its officers be
perpetually enjoined from refunding the bonds, etc. After
the cause had been appealed to this court, Michael Ronan, a
holder of one of the bonds, applied for and was granted
leave by this court to intervene as a party appellee *pro in-
teresse suo*, and through his counsel he has filed a brief in
support of the decision of the lower court.

The questions presented and so ably argued, *pro* and *con*,
by counsel for the respective parties, may be said to be em-
braced within two propositions. (1) The validity of the
bonds, under the authority, if any, which the city had to issue
the same for the purpose which it did; (2) the validity of
the curative statute of 1897, and its effect upon the bonds in
controversy as an indebtedness of the city of Jeffersonville.

In the case of *Meyers* v. *City of Jeffersonville*, 145 Ind.
431, being the same case mentioned in the complaint—the
validity of the bonds now in dispute, and the right of the city
to refund them, were involved. Their validity, under the
facts then existing, and the right of the city to refund them,
was, by the unanimous decision of this court in that case, de-
nied, and the judgment of the lower court, sustaining the le-
gality of the bonds, and denying the prayer of the complaint
for a writ of injunction to prevent the city from refunding
them, was reversed. None of the holders of the bonds were
made parties to that action, and it seemingly was a friendly
suit, instituted and prosecuted in order that the opinion of
this court might be obtained relative to the legal *status* at
that time of the bonds in controversy.

At the next session of the legislature following that de-
cision, the statute legalizing the validity of these bonds was
passed. See Acts, 1897, p. 108. This court, in *Meyers* v.
*City of Jeffersonville*, 145 Ind. 431, in the course of its

opinion, speaking in reference to the validity of these bonds, said: "Counsel for the appellees cite us to no express authority from the legislature, for the issue of bonds for the purpose of defraying the expense of litigation incident to the removal of a county seat, and the cost of a lot and a court-house and jail for a county, made necessary by such removal. Nor have we been able to find any such express authority."

It is insisted by the learned counsel for Ronan, the intervener, that it was within the province of the legislature in 1876, and prior thereto, under the Constitution of this State, by appropriate legislation, to have authorized the city of Jeffersonville, through its common council, to render financial aid or incur the indebtedness which it did, under the circumstances, in the removal of the county seat from Charlestown, and its location in the said city of Jeffersonville. Or, in other words, that the legislature might have authorized the common council of the latter city, previous to August 8, 1876, to exercise the power which it assumed to exercise under the ordinance of that date in issuing the bonds for the purpose in question. In support of this insistence, we are referred to the holding of this court in the appeal of the *Board, etc.,* v. *State, ex rel.,* 147 Ind. 476, and the authorities there cited. In that case, which pertained to the removal of the county seat of Jackson county, we said: "The special benefits and conveniences which will result to those residing within the immediate locality in which a county seat is located and maintained by reason of the enhancement of the value of their property, are facts which are well recognized by all and generally serve to stimulate the inhabitants of such localities in their earnest efforts to secure the location of the county seat in their own vicinity, and no doubt it was the knowledge of this fact which prompted the legislature in requiring the inhabitants of the particular township to bear the burden of this special tax for the purpose designated. This court in *Marks* v. *Purdue University,* 37 Ind. 155, recognized the doctrine that the lawmaking power may impose

the expense of a public improvement upon a particular local-
ity which will receive benefits derived therefrom.    *   *   *
On no view of the question can it be asserted that the statute
conflicts with the fundamental law for the reason that it
creates a special district out of the township wherein the new
county seat is to be located, and confines the assessment of
the tax to construct the new buildings to this particular lo-
cality.   Cooley on Taxation, p. 149.   The legislature in its
wisdom having authorized the entire tax for the construction
of these new buildings to be assessed against the taxable
property of those whom in reason it considered would be im-
mediately benefited by the relocation of the county seat, we
are aware of no provisions of our Constitution, under the cir-
cumstances, which would deny it the power to place the
whole burden where it deemed it proper to rest."

We concur with counsel in their contention; and, in view
of the principles asserted in the case from which we have
quoted, and those affirmed in the well considered cases
therein cited, especially in that of *Marks* v. *Purdue Uni-
versity*, 37 Ind. 155, their claim or contention in this respect
is amply supported by the authorities.   It would certainly
seem that the same principle which permits municipal corpo-
rations, by legislative authority, to make donations or incur
indebtedness in aid of the location within their limits of rail-
roads and other public improvements of a like nature and
benefit to the public is applicable, and serves to sustain the
doctrine for which counsel contended.   The power of taxa-
tion must be exercised for a public purpose, and unless re-
stricted, however, by some provision of fundamental law, it
may be exercised or conferred by the legislature to an unlim-
ited extent.   It is certainly a fact, and one well recognized,
that the location of a county capital or seat of justice at a
particular town or city, and the erection therein of the
necessary county buildings, and the administration thereat of
all the affairs or public business of the county, are matters of
public concern, and much to be desired by the inhabitants of

such town or city, immediately and especially benefited thereby in many respects. The location of a county seat therein, in view of all the incidental benefits and advantages derived therefrom by the citizens of the place in general, may certainly be considered of such benefit to and enhancement of all the property therein, as, under the circumstances, would justify the legislature, in its discretion, in authorizing the entire burden of the expense incident to such location to be laid upon the property of the particular district composed of the territory within the limits of such municipal corporation, by providing for the discharge or payment thereof by taxes levied upon all the property in such district subject to taxation. That this right or power is vested in the State, to be exercised or conferred by it through its legislature in the light of the principles advanced or asserted in *Board, etc.,* v. *State, ex rel.,* 147 Ind. 476, and the authorities therein cited, cannot be successfully denied. A city, like other municipal corporations, serves but as an agency or instrumentality in the hands of the legislature to carry out its will in regard to local governmental functions and internal concerns. Dillon Munic. Corp., sections 20 and 21; Beach Pub. Corp., sections 5 and 478; 15 Am. and Eng. Ency. of Law, pp. 952 and 953; *Center School Township* v. *State, ex rel.,* 150 Ind. 168. Subject to the restrictions of the State and Federal Constitutions, the legislature would seem to have complete power and control over municipal corporations. Especially is this true in reference to authorizing them to contract debts, and to issue and sell negotiable bonds, and other evidences of such indebtedness. Simonton on Munic. Bonds, section 284.

Counsel for appellee assert that, in view of the fact that this is the first opportunity that a holder of any of these bonds has had to be heard in regard to their validity, and in consideration of the contention of appellant's counsel, whereby they assail the bonds as incurably invalid and ask this court to adjudge, in effect, that the holders thereof are

without remedy in the premises, and that the citizens of Jeffersonville are entitled to enjoy the benefits which they have received as a result of the expenditure of the money for which these bonds were issued and sold, and at the same time be permitted to repudiate what, under the circumstances, they ought to consider as just and binding obligations, therefore, in view of all this, they feel justified in citing us to a statute which they insist is not shown to have been considered in *Meyers* v. *City of Jeffersonville*, 145 Ind. 431. The provisions of this law, they contend, will sustain the acts of the city in incurring the indebtedness in aid of the construction of the public buildings rendered necessary by the removal and location of the county seat. It is then claimed, that, by an act approved March 9, 1875, (Acts of 1875, p. 34, R. S. 1876, p. 378) which relates to public grounds and public buildings on the relocation of county seats, under the provisions of section two, the county authorities of Clark county were given the right to accept donations towards the expenses of constructing public buildings in connection with the relocation of the county seat. Section two provides as follows: "Whenever * * * there shall be paid or donated towards the erection of a court-house and the necessary offices at the new county seat, etc." The further claim is then advanced by counsel that by the provisions of section sixty of the general system of laws relating to the incorporation of cities (See Davis 1876, p. 298, section 3152 R. S. 1881) which it is insisted must be construed along with the provisions of section two of the act of March 9, 1875, *supra;* and, when so construed, it is contended that this latter section must be held sufficient to have empowered the city of Jeffersonville to make donations in money or bonds to aid in the construction of the court-house and other public buildings of the county at said city, which, as insisted, ought to be held public improvements, within the meaning of section sixty, *supra*. The greater part of the provisions of this section of the statute deals with the power conferred by the legisla-

ture upon an incorporated city on the petition of a majority of its resident freeholders to subscribe to the stock of railroads and other roads, or to make donations in money or bonds, to aid in the construction of such works.   It also permits donations by a city in money or bonds in aid of "public improvements or public works."

Without elaborating upon the question thus presented by counsel, in regard to the construction or interpretation of the statute mentioned, we are of the opinion that their contention is not tenable, and cannot be sustained. When the scope of this statute is considered, the clause "public improvements or public works" cannot be so extended or construed as to authorize the city to render aid, by donation in money or bonds, in locating therein the seat of justice and constructing the necessary county buildings; and we are compelled to adhere to the exposition of the law given in *Meyers* v. *City of Jeffersonville,* 145 Ind. 431, that the city was not invested at the time with legislative authority to incur the indebtedness and issue the bonds in question.   But it may at least be said, we think, that the provisions of this section afford a semblance or color of legal authority for the action of the city in issuing its bonds for the purpose as it did.   In view of this feature of the case, nothing being disclosed to the contrary, it will not be unreasonable to presume that the common council of the city of Jeffersonville relied on this statute, and upon the petition of a majority of the resident freeholders thereof exercised thereunder the power which it did.

It is more reasonable to indulge in this presumption, under the circumstances, than in one that would place the city authorities in the attitude of exercising authority without any color or semblance of law whatever.   Granting the power of the legislature, under our Constitution, as we must, for no sufficient reason is shown for denying it, to have originally authorized the common council of the city of Jeffersonville to issue and negotiate bonds to obtain money for the payment of the indebtedness incurred by the city as a donation, to effect-

uate the purpose or object heretofore mentioned, we may next proceed to inquire in regard to the power of the legislature, under the circumstances, subsequently to ratify, confirm, and legalize that which it originally might have empowered the city to do, and whether such legislation may, in effect, be considered the equivalent of legislative authority in the first instance, and to operate with like effect.

There can be no doubt in regard to the intent or meaning of the ratifying act of 1897. The legislature, in the first section, distinctly declares that certain bonds or instruments to the amount of $87,000, issued under an ordinance of the common council of the city of Jeffersonville on the 8th day of August, 1876, due and payable twenty years after date, "are hereby ratified, confirmed, and declared to be legal and valid obligations of such city, and the said ordinance of the common council and all acts done in respect to the issue of such bonds are hereby ratified, confirmed, and made legal." Section two provides that the common council of said city may refund said bonds by issuing in exchange therefor other bonds of equal amount, and may fix the time and place of payment, and the rate of interest. It is then declared that, when refunding bonds have been issued, no action or proceedings shall be instituted by the city, or any other person or persons, the object of which shall be to impair the validity or security of such refunding bonds, nor shall any defense be interposed to any action by the city, or other persons, the object of which defense shall be for a like purpose. Section three dispenses with notice in the event refunding bonds are issued, unless required by the common council. Section four declares an emergency for the immediate taking effect of the act. It is conceded by counsel for appellant that there is no constitutional restriction in this State against a passage by the legislature of what is denominated a curative or legalizing statute; but it is insisted, however, that, as there was an entire lack of legislative authority upon the part of the city of Jeffersonville to incur the debt and issue the bonds, as it

did, that therefore the statute in controversy cannot, ·in effect, operate to supply the ‚original authority which was lacking, but can only operate to cure irregularities, and dispense with certain formalities, etc.    Appellant's counsel further contend that the act in question virtually creates the indebtedness in dispute, and, as the facts in the case disclose that the city of Jeffersonville on and after April 21, 1896, was indebted in excess of two per cent. of the value of its taxable property, therefore the statute is violative of article 13, section 1, as amended March 14, 1881.

The purpose or object of the act plainly was to legalize and validate the acts of the city,—the latter, as heretofore stated, being but an agency or instrumentality in the hands of the legislature,—by ratifying and confirming the authority assumed, which, as we have seen, might have been orig-· inally conferred, and the exercise thereof lodged in the city's common council, it being a matter over which the latter would have had jurisdiction in the event such authority had been originally conferred upon the city.    The object or intent of the legislature in the enactment of the statute was to fully validate the bonds in all respects, and to make them binding obligations, so far as the legislature could, whether their invalidity consisted in the absence of authority to isssue them for  the purpose mentioned, or existed on account of any irregularities or informalities by which they might be affected.    This purpose or object, we are constrained to hold, was accomplished by the act in controversy, and that the law-making power thereby ratified, confirmed, and made legal the unauthorized power or authority which the city, through its council, assumed to exercise.    In its effect and operation the act must be held equivalent to conferring original legislative authority upon the city of Jeffersonville which would have authorized it to incur the indebtedness and issue the bonds to obtain the necessary means to defray the debt; and these obligations must therefore be considered in the same light as though they were valid *ab initio*, unless the curative

statute can be said to be open to the objections urged against it by appellant. That the legislature has the power to enact legislation of the character of that in question, in the absence of constitutional restrictions either federal or state, where vested rights have not intervened, is well affirmed and settled by many decisions, not only in this jurisdiction but elsewhere. Among the number we cite the following: *Walpole* v. *Elliott*, 18 Ind. 258; *Sithin* v. *Board, etc.*, 66 Ind. 109; *Marks* v. *Purdue University*, 37 Ind. 155; *Gardner* v. *Haney*, 86 Ind. 17; *Cookerly* v. *Duncan*, 87 Ind. 332; *Muncie Nat. Bank* v. *Miller*, 91 Ind. 441; *Kelley, Treas.*, v. *State, ex rel.*, 92 Ind. 236; *Johnson* v. *Board, etc.*, 107 Ind. 15; *Bronson* v. *Kinzie*, 1 Howard 310, 331; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; *Thomson* v. *Lee County*, 3 Wall. 327; *City* v. *Lamson*, 9 Wall. 477; *New Orleans* v. *Clark*, 95 U. S. 644; *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Pompton* v. *Cooper Union*, 101 U. S. 196; *Read* v. *Plattsmouth*, 107 U. S. 568, 2 Sup. Ct. 208; *Quincy* v. *Cooke*, 107 U. S. 549, 2 Sup. Ct. 614; *Jonesboro City* v. *Cairo, etc., R. Co.*, 110 U. S. 192, 4 Sup. Ct. 67; *Anderson* v. *Santa Anna Tp.*, 116 U. S. 356, 6 Sup. Ct. 413; *Bolles* v. *Brimfield*, 120 U. S. 759, 7 Sup. Ct. 736; *City of Bridgeport* v. *Housatonuc R. Co.*, 15 Conn. 475; *Lycoming* v.*Union*, 15 Pa. St. 166; *Sharpless* v.*Mayor, etc.*, 21 Pa. St. 147; *State, ex rel.*, v. *Mayor, etc.*, 10 Rich. (S. C.) 491; Simonton on Mun. Bonds, sections 256 and 257; Cooley on Const. Lim. 466; Beach Pub Corp., section 904.

The Supreme Court of the United States, it will be seen upon the examination of its decisions, has repeatedly affirmed and adhered to the doctrine that, where municipal corporations have issued bonds or other evidences of indebtedness which, at the time of their issue, were unauthorized, it is within the power of the legislature to validate and legalize such issue by subsequent curative legislation. Such ratifying or legalizing act of the legislature, as the authorities

assert, is of the nature, or, rather, analogous to, a ratification by the principal of the unauthorized acts of the person who assumed to be his agent. The act of the latter had no validity of itself, but the ratifying act of the principal is of the same and equal import in all respects as original authority. *Marks* v. *Purdue University,* 37 Ind. 155; *Sithin* v. *Board, etc.,* 66 Ind. 109; *Beloit* v. *Morgan,* 7 Wall. 619; *Grenada County, etc.,* v. *Brogden,* 112 U. S. 261, 5 Sup. Ct. 125; *Mattingly* v. *District of Columbia,* 97 U. S. 687; *Pompton* v. *Cooper Union,* 101 U. S. 196; *Persons* v. *Mc-Kibben,* 5 Ind. 261; *Express Co.* v. *Rawson,* 106 Ind. 215; *Bolton Partners* v. *Lambert,* 41 Ch. Div. 295.

In *Marks* v. *Purdue University, supra,* the board of commissioners of Tippecanoe county made an order donating $50,000 for the purpose of securing the location of an agricultural college in that county. This action of the board of commissioners was subsequently ratified by the legislature, and the question in regard to the invalidity of the order of the board on account of lack of legislative authority, and also in respect to the effect of the curative legislation, was presented to the consideration of this court in that appeal. In the course of the opinion in that case, Worden, J., speaking as the organ of this court, said: "We come to the question as to the power of the board to make the order. No statute has been cited, and we are not aware of the existence of any, in force at the time, that authorized the making of the order. It follows that the order was made without legislative authority. Still it was not void in that absolute sense that made it incapable of ratification. If a party, without authority, but professing to act as the agent of another, does an act in the name of his supposed principal, the act is not absolutely void, but may be ratified by the supposed principal, and when so ratified it is as valid as if the pretended agent had had full authority when the act was done. That an order of the board of commissioners, made without authority of law, may be ratified and rendered valid and effectual, is established by

the numerous cases in this court upholding the act of March 3, 1865, Davis Supp. 1870, p. 565, legalizing bonds, orders, and appropriations made for the purpose of procuring or furnishing volunteers and drafted men, etc."

In *Johnson v. Board, etc.*, 107 Ind. 15, this court said: "There is no inhibition in the Constitution against the passage of retrospective statutes. That such statutes may be passed by the legislature, in the absence of a constitutional inhibition, is well settled. And especially is this so, if the effect of the statute is in accord with justice, equity, and sound public policy. And hence such statutes have been sustained, where their effect was to render valid contracts, which, but for them, would have been void.   *   *   *   It is settled by our decisions, and the authorities elsewhere, that curative or retrospective statutes may cure defects and irregularities in proceedings, even though the defects and irregularities are so flagrant as to render the proceedings, for all practical and enforceable purposes, null and void." Again on page twenty-three of the opinion in this case it is said: "Applying the above rulings, and the rule upon which they rest, to the case before us, it may well be said that as the legislature might, in the first instance, have provided by general law for the location and opening of free gravel roads by the county boards at any session, so it can, by subsequent curative or retrospective general law legalize and validate all such proceedings taken and had at any session of such boards. The curative act of 1885, therefore, is not objectionable on the ground that it is retrospective."

In the case of *Mattingly v. District of Columbia*, 97 U. S. 687, Justice Strong, speaking as the organ of the Supreme Court of the United States, in the opinion on page 689, said: "Were it conceded that the board of public works had no authority to do the work that was done at the time when it was done, and consequently no authority to make an assessment of a part of its cost upon the complainants' property, or to assess in the manner in which the assessment was made,

the concession would not dispose of the case, or establish that the complainants have a right to the equitable relief for which they pray. There has been congressional legislation since 1872, the effect of which upon the assessments is controlling. There were also acts of the legislative assembly of the district, which very forcibly imply a confirmation of the acts and assessments of the board of which the bill complains. If Congress or the legislative assembly had the power to commit to the board the duty of making the improvements, and to prescribe that the assessments should be made in the manner in which they were made, it had power to ratify the acts which it might have authorized. And the ratification, if made, was equivalent to an original authority."

In *Pompton* v. *Cooper Union*, 101 U. S., on page 202, the same court again said: "In cases like this, legislative ratification is the equivalent of original authority, and what is clearly implied in a statute is as effectual as what is expressed. * * * . Whether this statute was a ratification of the sale of the bonds as made, if such ratification were needed, is a point which the view we take of the case renders it unnecessary to consider. It was certainly a clear recognition of Pompton as one of the townships authorized to issue bonds in aid of the railroad company,—a legislative construction entitled to great respect."

In *Beloit* v. *Morgan*, 7 Wall., on page 624 of the opinion, it is said: "Whenever it has been presented, the ruling has been that, in cases of bonds issued by municipal corporations, under a statute upon the subject, ratification by the legislature is in all respects equivalent to original authority, and cures all defects of power, if such defects existed, and all irregularities in its execution. The same principle has been applied in the courts of the states. This court has repeatedly recognized the validity of private and curative statutes, and given them full effect, where the interests of private individuals were alone concerned, and were largely involved and affected."

The ratifying act of 1897 cannot be said to fasten unwillingly upon the city the indebtedness, and thereby compel its payment. In a sense it simply gives effect to the will of the city, as expressed by it in 1876, through its common council, and no doubt also ratifies the desire of a large majority of the resident freeholders, expressed, presumably, to the common council, by means of petition or otherwise. The council, as we have seen, in the refunding ordinance of April 21, 1896, declared the bonds to be just obligations of the city, and that their validity had never been called in question. These bonds had existed unchallenged for a period of nearly twenty years after their execution, and after the city had derived the benefits of their proceeds, and not until the institution of the suit in the Meyers case, so far as we are apprised, was their validity assailed.

The contention of appellant's counsel that the legislature was not empowered to enact the statute in dispute, for the reason that it creates a debt, and thereby the city, at the time of its passage, became indebted in excess of the constitutional limit fixed by section 1, article 13, as amended March 14, 1881, is not tenable. The legislature, by the act in question, neither created nor professed to create a debt. It simply recognized the indebtedness and bonds as having an existence in 1876, and ratified, confirmed, and legalized them.

The appellant recognizes in his complaint that the statute did not create the debt, for therein he avers that the indebtedness for which the bonds were issued was incurred by the city prior to August 9, 1876. While it is true that the bonds which evidenced the indebtedness in dispute, strictly speaking, were not, at the time of their execution and sale in 1876, impressed with such validity as to make them binding and enforceable obligations of the city, still, they were not invalid to the extent of rendering them incapable of ratification by the principal, the lawmaking power of the State; and, in a sense at least, they did exist as an indebtedness of the city from the time of their issue and sale, subject, however, to the required

ratification by the legislature, and this act of the latter must be deemed to make them, from the beginning, a valid and subsisting indebtedness. This indebtedness was not incurred, nor the bonds issued, in defiance of law. They were simply impressed with the lack of authority of the issuing party, which, as we have seen, might have been previously conferred. As heretofore said, a curative act, under such circumstances, is analogous to the ratification by the principal of the assumed authority of his agent, which ratification relates back and binds the principal in like manner and to a like extent as though the authority assumed had been given in advance. In the case of contracts by the agent, under an authority assumed by him, no new or additional consideration is required to support the ratification by the principal, for by adopting the contract, he accepts it as duly authorized by him from the beginning with the original consideration. 1 Am. and Eng. Ency. of Law (2nd ed.) p. 1181; *Express Co.* v. *Rawson*, 106 Ind. 215.

Such ratification or confirmation by relation back affects the original unauthorized contract or transaction so that, as between the parties, their rights and interests are considered in legal contemplation as arising at the time of the original act or contract, and not merely from the time of ratification. A suit to enforce the obligation assumed by the ratifier is founded upon the original transaction or contract and not upon the act of ratification. *Grant* v. *Beard*, 50 N. H. 129; *Drakely* v. *Gregg*, 8 Wall. 242.

In reason, and in the light of the authorities to which we have referred, the bonds, ratified, legalized, and made valid by the curative act of the legislature, must be considered, in legal contemplation, to all intents and purposes, as though they had been valid and subsisting obligations of an indebtedness against the city at the date of their issue in August, 1876. At that time there existed no constitutional provision limiting the indebtedness of cities, and, to reaffirm what we have heretofore said, there was nothing in our fundamental

law which would have prohibited the city of Jeffersonville, under legislative authority, from incurring the bonded indebtedness for the particular purpose as it did. It is settled that the constitutional amendment of March 14, 1881, is prospective and not retrospective, and it does not, in terms, forbid the legislature from legalizing previous acts of political or municipal corporations. Neither does it operate so as to affect the bonds of such corporations, issued prior to its taking effect, nor to prohibit the refunding thereof, and the act in question, under the facts, cannot be said to be in conflict therewith. *Powell* v. *City of Madison*, 107 Ind. 106; *Meyers* v. *City of Jeffersonville*, 145 Ind. 431; Cooley on Const. Lim. 77.

In the appeal of *Powell* v. *City of Madison, supra,* this court, speaking in regard to the operation of this amendment of our Constitution said: "Its operation was only prospective. Where the limit of a two per centum indebtedness had already been reached, it prohibited the contracting of any new or further indebtedness; and where that limit had not been reached, it simply restrained municipal corporations from incurring new debts in excess of such limit. Consequently, the only effect which the adoption of the constitutional amendment now before us had upon the sections of the statute under consideration, was to limit their application to the indebtedness of a city or town which had been contracted prior to the 14th day of March, 1881, and to such as has been since incurred, not in excess of the two per centum limit upon the value of its taxable property. As the ordinance, set out in the complaint, proposes to fund only indebtedness which had been contracted prior to said 14th day of March, 1881, it applies to a class of debts not affected by the constitutional amendment in question, and is, in consequence, not in conflict with any of the provisions of that article of the Constitution."

We have examined and given due consideration to the cases cited by counsel for appellant to uphold their conten-

tion in respect to the invalidity of the legalizing act in controversy. It would. unnecessarily extend this opinion were we to elaborate in the consideration of these authorities. It is sufficient to say that, in the main, under the circumstances, they are not applicable to the question involved in the case at bar. The case of *Sykes* v. *Mayor, etc.*, 55 Miss. 115, at first blush, would seem to lend some support to appellant's insistence, but, under the facts in this appeal and the law applicable thereto, it in reality cannot be said to sustain the questions which counsel for appellant advance. The facts in the case, briefly stated, are: In November, 1869, the mayor and aldermen of the town of Columbus caused to be issued to the Memphis, etc., R. Co., a large number of the town's bonds with coupons of interest attached. The plaintiff in error in that case brought an action of debt on certain ones of said coupons which were overdue, and of which he was a *bona fide* holder for value. A demurrer was sustained to the plaintiff's declaration on the ground that the town of Columbus had no power to issue, or cause to be issued, the said bonds and coupons. In December, 1869, a new Constitution was adopted by the state of Mississippi which, among other things, forbids any city or town to become a stockholder in or lend its credit to any corporation, etc., except on the condition that at an election two-thirds of the electors of the city assented thereto. After the adoption of this Constitution, the legislature, in 1872, passed a statute which declared that all subscriptions to the capital stock of said company, made by any county, city, or town, not made in violation of the Constitution of the State, "are hereby legalized, ratified, and confirmed." It was conceded that these bonds, before the passage of the curative act, were invalid, by reason of lack of legislative authority in the town to issue the same. The holding in the Sykes case was to the effect that after the issue of the bonds, and before the curative act of 1872 had been passed, the new Constitution had intervened and placed the legislature under a disability which prevented it from rati-

fying the act, and thereby dispensing with the condition requiring that two-thirds of the electors must give their assent. In the case at bar, however, we have seen that, at the time the bonds were issued, there existed no constitutional inhibition, conditional, or otherwise, against the right of the legislature to confer upon the city the authority which it assumed to exercise. Neither has any fundamental restriction intervened since the issue of the bonds which can be construed to prevent the legislature from ratifying and legalizing the acts of the city leading up to and including their issue and sale, for when they are viewed as an indebtedness, existing since 1876, as they must be, for the reasons heretofore stated, the constitutional amendment of 1881 is not applicable.

In addition to the objections which we have already passed upon, it is said that the statute of 1897 is also invalid for other reasons: (1) That it, in effect, permits the property of the taxpayers of the city of Jeffersonville to be taken without just compensation, and is therefore violative of article 1, section 21, of the Constitution; (2) it denies to the taxpayers of the city privileges and immunities enjoyed by all other taxpayers of the State, and hence is in conflict with article 1, section 3 of the bill of rights, recognized by the Constitution; (3) that it is a legislative attempt to reverse or interfere with the judgment of this court in *Meyers* v. *City of Jeffersonville*, 145 Ind. 431, and for this reason is antagonistic to article 7, section 1 of the Constitution.

It is so evident that the first and second contentions are so devoid of merit that the mere statement thereof will fully expose that fact, and they may be dismissed without further consideration. In respect to the third objection, it may be said that at and before the time appellant commenced this action, the invalidity of the bonds in question had been fully cured by the act of 1897, then in full force and effect, and his rights in the premises must be determined under the law

as it then and now exists, and not by the law as it stood prior to the time he instituted this suit. *Price* v. *Huey*, 22 Ind. 18; *King, Treas.,* v. *Course*, 25 Ind. 202; *Johnson* v. *Board, etc.,* 107 Ind. 15. It is also suggested, or mildly insisted, that the statute is prohibited by the Constitution because it is local and special, instead of being general and of uniform operation. It certainly does not fall within any of the cases enumerated in section 22 of article 4 of the Constitution, and therefore it was within the discretion of the legislature to determine whether a general law was applicable. *Mode* v. *Beasly*, 143 Ind. 306; *Board, etc.,* v. *State, ex rel.,* 147 Ind. 476; *City of Indianapolis* v. *Navin*, 151 Ind. 139, 41 L. R. A. 337.

If the question of vested rights is in any way involved by reason of this statute, it is not presented in this appeal, and if it arises in favor of any party, it may be considered, when duly presented to this court. In our judgment, the validity of the bonds, and the right of the city to refund them, for the reasons stated in this opinion, must be sustained; and appellant's right to the injunction which he seeks was properly denied, and the judgment of the lower court is therefore affirmed.

## DISSENTING OPINION.

HACKNEY, J.—Conceding that ordinarily the ratification of an unauthorized act has the effect to confer authority for the act at the time it was done, I am not satisfied that the rule, as strongly as I have stated it, can be applied in this case. The bonds in question, at the time of their execution, and continuously up to the time of the passage of the act of 1897 were void. They were as no obligations. As sometimes said, they were as so much blank paper. The act of 1897 gives them the first life or validity possessed by them. Its practical effect is to create, for the city, a debt in the amount of the bonds. I do not dwell upon the question of legislative power to create a debt for a city; but where the debt is given life and vigor at a time when, under the Constitution, a debt

could not be created by the city, even with express legislative authority, I do not feel satisfied that they could be rendered a debt valid by relation back to the time of their execution. Before the act the city did not owe the amount of the bonds. The bonds did not represent a debt. To make them a debt is an act exceeding the limits prescribed by the Constitution. I firmly believe that if the debt could not have been validly created in 1897, by authority of the General Assembly, there could exist no power to ratify or create a debt by relation back to a time when power did exist. This question relates to the power of the General Assembly, as it is limited by the Constitution. Under that instrument there is no power to create the debt, and, as I believe, no power to ratify it and give it relation back to a time when power did exist. In other words, the power to ratify exists only where the power exists to authorize the act sought to be ratified.