

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann

~~XXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. Sam Bain
County Attorney
Leon County
Centerville, Texas

Dear Sir:

Opinion No. 0-1681
Re: Removal of the county seat of
Leon County, Texas, from Center-
ville, the present county seat;
and related questions.

Your letter of recent date, requesting the opinion of
this Department on the above matter and related questions, has
been received.

We quote, in part, from your communication:

"1. In case a municipality bears the expense
of building a new court house and moving the county
site does the law still require the majority of
resident free-holders to petition the court for an
election and does it still require a 2/3 majority
of the voters favoring same to move the court
house.

"2. Would a city be permitted under the con-
stitution and statutes of this state to vote bonds
creating a debt upon the city for the purpose of
building a court house for the county.

"3. Exactly what is a free-holder?"

You further point out in your letter that Centervillle,
the present county seat, is located within five miles of the
geographical center of the county, and has been the county seat
of Leon County for more than forty years.

The answer to your first question is found in the provi-
sions of Articles 1595 and 1596, Revised Civil Statutes of Texas.
Article 1596, supra, provides in part, as follows:

"When a county seat has been established for
more than forty years, it shall require a majority
of the resident freeholders and qualified voters

of said county to make the application, said majority
to be ascertained by the county judge from the
assessment rolls thereof."

The application referred to in this quotation is that
directed to the county judge, elsewhere provided for in the
statute, calling for an election in the county on the issue of
the removal of the county seat.

Article 1595, supra, in part, reads as follows:

"No county seat situated within five miles
of the geographical center of any county shall
be removed except by a vote of two-thirds of all
the electors in said county voting on the subject;
. . . . . . . . . . . ."

The condition prefacing your first question, "in case
a municipality bears the expense of building a new court house
and moving the county site," of course, would have no effect on
the application of Articles 1595 and 1596, supra. The question
of the municipality bearing such expense is discussed in our
answer to your second question which follows.

There is no inherent right, under the Constitution of
Texas, of a municipality to issue its bonds. Such right exists,
if at all, under the general laws of the State, and the purposes
for which bonds may be issued by a municipality are likewise con-
trolled by the general laws.

Section 2 of Article 11 of the Texas Constitution, pro-
vides:

"The construction of jails, court-houses and
bridges and the establishment of county poor
houses and farms, and the laying out, construction
and repairing of county roads shall be provided
for by general laws."

Article 718, Revised Civil Statutes of Texas, provides
in part:

"County issues authorized. - After having
been authorized as provided in Chapter 1 of this
title, the commissioners' court of a county may
lawfully issue the bonds of said county for the
following purposes:

"1. To erect the county court house and
jail, or either;  . . . . . . . . . ."

By general laws, therefore, it is specifically provided that county courthouses are to be constructed by the county itself, for which the bonds of the county may be lawfully issued. There is no authorization of, or provision for, the construction of county courthouses by municipalities.

We think it obvious that the construction of a county courthouse is primarily county business and, conversely, could not be classified as municipal business.

As correctly stating the rule with reference to the express and implied powers of a municipality, we quote from Texas Jurisprudence, Vol. 30, para. 50, page 108:

> "The powers of a municipal corporation are either express or implied. The former are those which the legislative act under which they exist confers in express terms; the latter are such as are necessary in order to carry into effect those expressly granted, and which must, therefore, be presumed to have been within the intention of the legislative grant. Such a corporation can exercise those powers and only those powers which are granted to it in express words, or, are necessarily or fairly implied in or incident to the powers expressly granted, or are essential to the accomplishment of the declared objects and purposes of the corporation..... But an implied power must arise out of and be appropriate to the execution of an express power. And, to infer or imply power to do a particular thing, it must appear not only to be convenient, useful and beneficial to the municipality, but also indispensable for the discharge of the obligations and purposes of its corporate existence - so that without its exercise an expressed duty of authority would be rendered nugatory........"

The authority of a municipality to issue its bonds is found in Article 823, Revised Civil Statutes of Texas, which reads:

> "Any city or town may issue its coupon bonds for such sum as it may deem expedient for the purpose of the construction of purchase of public buildings, waterworks, sewers, and other permanent improvements within the city limits, and for the construction and improvement of the roads, and streets of such city or town. This article includes building sites and buildings for the public

free schools and institutions of learning within
such cities and towns which assume the exclusive
control of their public free schools and institu-
tions of learning.  Such bonds shall bear inter-
est not to exceed six per cent per annum and shall
become due and payable serially or otherwise not
to exceed forty years from their date and may be
payable at such place as may be fixed by ordinance."

The phrase "for the purpose of the construction or pur-
chase of public buildings," can have but one meaning; namely,
those buildings coming within the corporate functions of the
municipality.  Clearly, this statute does not expressly author-
ize a municipality to issue its bonds for the construction of a
county courthouse; it is equally clear that such authority can-
not be implied from the expressed powers given as being essen-
tial or necessary to the accomplishment of the objects, obli-
gations or purposes of the municipality.

In an analagous situation, we quote from the opinion of
the Supreme Court of Indiana in the case of Myers vs. City of
Jeffersonville, 145 Ind. 431, 44 NE 452, as follows:

"Money borrowed by a city to defray the ex-
pense of litigation involving the removal of a
county seat, and the cost of a lot and the build-
ing of a courthouse and a jail for a county, we
hold to be unauthorized; and bonds issued to se-
cure the money so borrowed have not such validity
in the hands of any holder, as to preclude a citi-
zen and taxpayer from the right of injunction to
prevent the refunding of such bonds."

Again we quote from the Supreme Court of Indiana, in the
case of Schneck vs. City of Jeffersonville, 152 Ind. 212, 52 NE
212, as follows:

"The clause 'public improvements or public
works' cannot be so extended or construed as to
authorize the city to render aid, by donation
in money or bonds, in locating therein, the seat
of justice and constructing the necessary county
buildings; and we are compelled to adher to the
exposition of the law given in Myers vs. City of
Jeffersonville, supra, that the city was not in-
vested at the time with legislative authority to
incur the indebtedness and issue the bonds in
question."

See also the case of Callam vs. City of Saginaw, 50 Mich.

7, 14 NW 677, wherein it was held that a city is unauthorized to borrow money for the purpose of erecting a county court-house, in the absence of specific authorization therefor by statute. See also the case of Russell, et al vs. Tate, et al, 13 SW 130, by the Supreme Court of Arkansas.

As we have heretofore pointed out, the Constitution of Texas provides that the construction of courthouses shall be provided for by general laws. Such provision is made by Article 718, supra, whereby county courthouses may be constructed by the county. There is no general law authorizing the construction of a county courthouse by a municipality. You are therefore respectfully advised that it is the opinion of this department that a municipality in Texas would not be authorized, under the Constitution of the statutes of this State, to issue its bonds for the purpose of constructing a courthouse for the county.

In your third question you ask what is a free-holder. This term is adequately defined in the case of Atkins, et ux, vs. Davis, et al, 291 SW 968, 970, as follows:

"A freeholder is one who holds land in fee or for life, or for some indeterminate period. 14 Am. & Eng. Ency. of Law, p. 530. A freeholder is elsewhere defined as a term used to designate the owner of an estate in fee in land as meaning one who holds freely; a person actually seized of an estate or freehold, legal or equitable; one who holds an estate in fee simple, fee tail, or for a term of life; one having title to real estate which may be inherited as real property. 27 C. J., p. 896. 'One who has an immediate beneficial ownership (or) interest, legal or equitable, in the title to a fee-simple estate in land, may be regarded as a freeholder.' Dean v. State, 74 Fla. 277, 77 So. 107."

Trusting that this answers your inquiry satisfactorily, we remain

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By s/Wm. J. Fanning
    Wm. J. Fanning
    Assistant

By s/Zollie Steakley
    Zollie Steakley

ZCS:AW:wc


APPROVED NOV 29, 1939
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By_s/BWB_Chairman